## ADAMS *v.* STATE.

### Opinion delivered July 7, 1924.

1. HOMICIDE—SUFFICIENCY OF EVIDENCE.—Evidence *held* to sustain a conviction of murder in the second degree.

2. CRIMINAL LAW—ARGUMENT OF PROSECUTING ATTORNEY.—It is not reversible error for the prosecuting attorney to make an argument based upon a misunderstanding of the testimony of a witness.

3. CRIMINAL LAW—ARGUMENT OF PROSECUTING ATTORNEY.—Where the prosecuting attorney stated that there were more killings in the county than in England, and that if the juries did not take to convicting somebody there would be still more, the prejudice, if any, was removed where the court told counsel to confine his argument to the evidence.

Appeal from Union Circuit Court; *L. S. Britt,* Judge; affirmed.

*Pat McNalley,* for appellant.

*J. S. Utley,* Attorney General, and *John L. Carter,* Assistant, for appellee.

SMITH, J.   Appellant was indicted and convicted for killing Jess Jiles on the 7th of October, 1923.   Mrs. Jiles had formerly been the wife of appellant, and three children had been born of their union.   According to the testimony of appellant, he had been visiting and contributing to the support of these children after being divorced from their mother, and, on the day of the killing, he sought to see the oldest child, a daughter, to ascertain from her what books she would require in school.   He testified that Jiles objected to his visiting at the Jiles home to see the children, and his practice was to walk or drive by the house until some one of the children saw him, when the other children would be notified of his presence, and they would come out into the road to see him and receive such gifts as he had brought them.   That, on the day of the killing, he desired to see his daughter, and for that purpose drove by Jiles' house.   Not seeing any of the children, he drove by the house for a short distance, when he turned his car in the road and returned. He drove back by the house without seeing the children, but saw Jiles in the yard, and, after driving about sixty yards beyond the house, he stopped his car and looked back to see if any of the children were in sight.   None of them were, but Jiles saw him stop, and came to the car and began to curse and abuse him, and he drove away. Still desiring to see the children, he returned and stopped his car near Jiles' home, and Jiles stepped from behind a tree and commenced firing at him with a double-barreled shotgun, and fired two shots, one of which broke the windshield of his car and knocked him out of the car, and, believing he was about to be killed by Jiles, he fired at Jiles, and killed him.

Appellant admitted doing his share of the cursing, and that he had his gun in the car during the time he was driving, but said he had borrowed the gun to go hunting

on the following day, in accordance with an appointment which he had made the preceding day.

It is the theory of the State that bad blood existed between the men, and both were willing to shoot it out, and that appellant had armed himself for the purpose of shooting Jiles.

A neighbor named Smith testified that he saw appellant stop at Jiles' house, and that he had heard loud and angry talking, and heard Jiles tell appellant to leave, and heard appellant say he would leave when he was "damn ready." Jiles went to the home of Smith and sought to borrow a gun, and, failing to secure one there, he procured one elsewhere, and, when Jiles left home, appellant drove to Smith's house, where he turned his car around. Smith observed the gun in appellant's car, and saw appellant change its position, and he testified that appellant was "fooling with the gun." Smith thought appellant had mistaken him for Jiles, so he stood up, and, when he did so, appellant put the gun down in the car, but it was near the steering-wheel, and the barrel extended out of the car.

According to Smith's testimony, only a few minutes elapsed between the different trips appellant made by Jiles' home, and, on the third of these trips, appellant stopped his car and commenced cursing the occupants of the house, and announced that if any of them stuck a head out he would shoot it off. Just then Jiles came out of the woods on the other side of the road and stepped behind a tree, and ordered appellant to leave, and, when appellant failed to do so, Jiles commenced firing. Appellant got out of his car, or fell out of it, and lay down behind the car. Jiles went into his house, and, in five or ten minutes, came out of his front door, when appellant, who had by that time got back into his car, fired at Jiles, and killed him.

A number of witnesses gave testimony tending to contradict and to support the respective theories of the case; but we think the testimony set out above is legally

sufficient to support the verdict of the jury, finding appellant guilty of murder in the second degree.

What we have just said disposes of the assignment of error that the verdict is not supported by sufficient testimony.

Special counsel argued that Smith had testified that appellant was fooling with his gun at Jiles' house, whereupon appellant's counsel objected to the argument, and asked the court to reprimand counsel for making it, and to tell the jury that the argument was unsupported by the testimony. The court declined to state what the testimony of the witness had been, but did tell the jury to consider only the testimony of the witness.

It is not reversible error for the prosecuting attorney to make an argument based upon a misapprehension of the testimony of a witness. A different question would be presented had he argued as a fact some proposition about which there was no testimony. But the jury heard the witness testify, and it was their province to determine what the witness' testimony had been. The witness did testify that appellant was fooling with the gun, but he did this at witness' house, instead of at Jiles' house. Still this was a proper circumstance for the prosecuting attorney to argue. The houses were not far apart, and it was fair to argue that appellant, in "fooling with his gun," was getting it ready for convenient and immediate use, although the "fooling" occurred at Smith's house, instead of Jiles'.

During the progress of the argument, counsel for the State said there were more killings in Union County, where the killing in question occurred, than there were in England, and that, if the juries did not take to convicting somebody, there would be still more. Objection was made to this argument, and the court stated to counsel who had made the argument that he should stay within the record, and the court stated to the jury that they would consider only the evidence in the case. It is insisted that this argument was improper and prejudicial, and that the

remarks of the court were not sufficient to remove the prejudice.

It is difficult to say just to what extent prosecuting attorneys may go in appealing to juries to enforce the law, and much must be left to the discretion of the trial judge. A prosecuting attorney would, of course, have no right to appeal to a jury to convict a man, whether he was guilty or not, for any purpose; but such does not appear to have been the purport of the argument here.

It is legitimate argument for the prosecuting attorney to state that a failure to enforce the law begets lawlessness, and this evidently was the interpretation the court placed upon the argument. In any event, the court told counsel to confine his argument to the evidence, and told the jury to consider only the evidence in the case, and we must presume, in view of this admonition, that the jury, as sensible men, knew they could not convict appellant unless the testimony in the case required that this should be done. *Blackshare* v. *State*, 94 Ark. 548.

No error appears, and the judgment is affirmed.