STATE *vs.* JULIA F. GREENE.

AUGUST 9, 1948.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

438

O'CONNELL, J. The defendant was indicted for murder and after a protracted trial was found guilty by a jury of murder in the second degree. A motion for a new trial was denied, and the case is before us on her exception to such denial and on other exceptions taken during the course of the trial.

The state's evidence showed that at about ten o'clock on the morning of November 2, 1946 the defendant accosted Mrs. Virginia Boston on School street in the city of Pawtucket, and after talking to her a few minutes drew a revolver from her shopping bag, aimed it at Mrs. Boston and fired three times. Two of the bullets entered her body and caused her death. The evidence also showed that Mrs. Boston had been keeping company with the defendant's husband, from which fact the state contended that this intimacy had embittered and enraged the defendant, culminating in the deliberate and premeditated killing of Mrs. Boston. Inspector Vincent A. Hourigan of the Pawtucket police testified that after the shooting, the defendant came to the police station and in a loud voice said: "Lock me up, she broke up my home. I shot her." While the defendant compelled the state to prove the actual killing of Mrs. Boston, there was no contention that she did not fire the shots that resulted in her death. The testimony of the state proved conclusively that the death of Mrs. Boston was caused by bullets fired from the revolver held by the defendant.

As bearing upon the question of premeditation, the state presented as a witness William W. Noonan, a licensed gun dealer, who testified that on October 5, 1946 the defendant called at his home for the purpose of purchasing a gun. She gave him a false name and address, and told him she wanted to purchase a revolver to give to her hus-

band as a Christmas gift. She selected the revolver later used by her in the shooting of Mrs. Boston, for which she agreed to pay $45. She made a deposit of $5 and returned later with the balance. At that time there was a serial number on the butt of the revolver, which had been filed off at the time of the shooting. It further appeared in evidence that when she received that revolver from Noonan she left with him for sale a long-barreled black revolver, which she had previously acquired and which was defective in that it could be fired but once without reloading.

The defendant gave a clear and coherent picture of her early life and constant quarrels with her husband over his association with Mrs. Boston, but expressed an almost utter lack of memory as to the actual killing. She did claim, however, in her statement to Inspector Hourigan shortly after the shooting that when she tried to speak with Mrs. Boston the latter refused to talk with her and called her a "parasite"; that when she heard the word "parasite" everything "seemed to go black." Her defense was insanity and she presented medical testimony to support this claim.

The defendant has briefed and argued numerous exceptions, but it is unnecessary to discuss them all at length. The more important exceptions, however, we shall discuss in detail.

Exceptions 3, 5 and 55 involve questions asked of prospective jurors, on their preliminary examination, by the assistant attorney general. They are as follows: 1. "Would you allow any sympathy that might be aroused in you in the course of this trial from the family situation or home life of this defendant to interfere with your verdict or your following of his Honor's instructions?" 2. "Do you have any feeling that a woman is justified in killing another woman who has stolen her husband's love?"

The defendant's objection that the first question contained no reference to sympathy for the deceased Mrs. Boston is without merit, since the defendant could have

interrogated prospective jurors concerning this matter. These questions were calculated to determine whether such prospective jurors would decide the issues raised solely upon the evidence and the instructions of the court.

In the examination of a juror on his *voir dire* much must be left to the discretion of the trial justice and where no abuse of discretion is shown conviction will not be reversed. *State* v. *Jacques*, 30 R. I. 578; *State* v. *Hathaway*, 52 R. I. 492. No abuse of discretion appears here, and exceptions 3, 5 and 55 are overruled.

Exception 4 is to the court's refusal to excuse Frederick E. Case, Jr. as a juror, on the ground that he had a fixed opinion that every killing was either unlawful, unjustifiable or inexcusable and that the defendant was thereby deprived of the benefit of one of her peremptory challenges. The questions propounded to and the answers given by this juror do not sustain the defendant's contention. The record shows that the defendant's counsel asked questions of this juror and received answers as follows: "Mr. Goldberg: If his Honor gives you certain instructions as to the law with reference to killing of a human being, would you follow out those instructions? Witness: Surely. Q. And if his Honor instructs you that under certain circumstances a person would be guilty of a crime of murder and under other conditions the person might not be guilty of the crime of murder, you would follow out his instructions with reference to that and apply the particular facts that you hear on the case and those instructions? A. That is true."

These questions and answers show clearly that this juror expressed a willingness to be governed wholly by the law and the evidence. The matter of excusing jurors for cause is largely in the discretion of the trial court and the exercise of such discretion will not be reviewed unless some abuse thereof clearly appears warranting the interference of the appellate court. *State* v. *Entwistle*, 38 R. I. 417. No such abuse appears in the instant case and exception 4 is overruled.

Exceptions 6 to 13 inclusive relate to the introduction of photographs depicting the body of the deceased and photographs of a part of the scene of the killing. The defendant contends that the admission of such photographs was not necessary to establish the *corpus delicti* and had no other purpose than to inflame and prejudice the minds of the jury against her. The determination of the relevancy and materiality of a photograph is ordinarily left to the sound discretion of the trial justice and the fact that the photographs were merely cumulative or that defendant admitted some of the facts thereby shown does not necessarily render them inadmissible. *Wilson* v. *State,* 31 Ala. App. 21; *Turrell* v. *State,* 221 Ind. 662; *State* v. *Robinson,* 201 S.C. 230; *People* v. *Burkhart,* 211 Cal. 726.

The state could not anticipate what facts defendant might admit or what defenses she might rely upon and therefore it was entitled to produce such competent and material evidence as it deemed necessary to establish the offense charged. Where photographs are competent and have a reasonable tendency to prove or disprove some material fact in issue, or shed light upon some material inquiry, they are admissible in evidence even though they may have an unavoidable tendency to cause an influence beyond the strict limits for which they are admissible. *State* v. *Miller,* 52 R. I. 440; *State* v. *Smith,* 70 R. I. 500. Exceptions 6 to 13 are overruled.

Exception 19 is to the admission in evidence of a map, marked state's exhibit 7, drawn by Edgar E. Maynard, employed in the engineering department of the city of Pawtucket, which showed the scene of the killing with relation to the surrounding territory. The evidence showed that the map introduced was drawn to scale; that it was prepared by one having the requisite qualifications; and that it was accurate. The rule is well established that maps illustrating the scenes of the commission of a crime and the relative location of streets or objects, if shown to be reasonably accurate, are admissible in evidence in

order to enable the jury properly to understand and apply the evidence to the particular case. Exception 19 is without merit and it is overruled.

Exception 20 is to the ruling of the trial justice permitting an answer to a question relating to state's exhibit 6. This was the gun with which Virginia Boston was killed. When that ruling was made this gun was marked as state's exhibit 6 *for identification,* but was later allowed in evidence. The order of the presentation of testimony with reference to exhibits is largely a matter within the court's discretion and since the testimony objected to was properly connected with a relevant and competent exhibit, we see no error in its admission. Exception 20 is overruled.

Exception 22 is to the admission by the trial justice of state's exhibit 11. This was the long-barreled black revolver left for sale by the defendant, under the name of Mrs. Helen Cooper, with the gun dealer William W. Noonan after the purchase from him of the revolver with which Mrs. Boston was killed. This black gun could only fire one shot and was offered in evidence by the state to prove that the defendant deliberately and with premeditation disposed of this weapon and purchased the gun with which Mrs. Boston was killed in order to procure a more effective instrument to assault Mrs. Boston. It was properly admitted in evidence and the defendant takes nothing by exception 22, which is overruled.

Exceptions 24 and 25 relate to rulings of the court sustaining the state's objections to certain questions asked of the medical experts called by the defendant. We are of the opinion that these rulings were correct, because the questions objected to referred to the sanity or insanity of the defendant but did not indicate whether certain terms therein were used in the medical or the legal sense. These exceptions are overruled.

Under exception 26 the defendant claims error in permitting the state to go beyond the legitimate scope of cross-examination. An examination of the record shows

that the question objected to was never answered responsively by the witness; hence there was no prejudicial error. This exception is overruled.

Exception 28 assigns error in allowing a question as to the defendant's ability to distinguish between right and wrong on an occasion about three years prior to the killing of Mrs. Boston. This question was put to Dr. Laurence A. Senseman to ascertain his opinion as to how long the defendant had been unable to differentiate between right and wrong and to determine the basis of his opinion that on November 2, 1946 the defendant could not distinguish between right and wrong. In the colloquy between counsel and the court which followed, the trial justice stated that the question of the sanity or insanity of the defendant was to be determined as of the date of the actual killing and so instructed the jury in his charge. The defendant was not prejudiced by this question or its answer and there is no merit in this exception, which is overruled.

The defendant contends under exceptions 29, 30, 32, 33, 34 and 35 that the court erred in allowing questions to expert witnesses, on cross-examination, as to what weight the witnesses attached to certain portions of the hypothetical questions. This contention is wholly untenable. The probative value of the expert's opinion is to be determined by the jury, which is entitled to know what weight such witness attaches to each factor which is made a part of the hypothesis upon which his opinion is based. The jury may find that some of these factors do not exist and therefore they should be entitled to know whether such missing factors loomed large or small in the expert's mind in reaching his conclusion. These exceptions are overruled.

Exceptions 39, 40 and 43 relate to rulings of the court in connection with the direct and cross-examination of Dr. Hugh E. Kiene, called as a witness for the defendant. The question involved in exception 39 asked for the opinion of an expert witness but it failed to state with sufficient or

reasonable clarity the various facts upon which the opinion of the witness was sought and was therefore objectionable. *Canham* v. *Rhode Island Co.,* 35 R. I. 177; *Oliver* v. *Pettaconsett Construction Co.,* 36 R. I. 477; *Caporicci* v. *United Electric Rys.,* 136 A. (R. I.) 11.

Exception 40 assigns error in allowing a question to Dr. Kiene asking for the factors which he felt were *unimportant* in arriving at his opinion. The jury was entitled to know on what facts in the history given him by the defendant the expert relied for his opinion. If the evidence failed to support these statements of fact his opinion might well have less value, because in the minds of the jury it might be based on a false premise or premises. The question was proper also as testing the value of the expert's opinion. Exception 43 assigns error in allowing a certain question asked Dr. Kiene by the assistant attorney general. Although the court did allow the question, the record shows this question was not answered, but the state proceeded to ask a new and entirely different question. No prejudice to the defendant appears by this ruling. Exceptions 39, 40 and 43 are overruled.

Under exception 44 the defendant claims error in permitting a police officer to testify in rebuttal as to her demeanor on November 2, 1946 when she was in the police station shortly after the shooting. Evidence as to the condition of defendant's mind when arrested shortly after the alleged offense is properly admitted in rebuttal to an affirmative defense of insanity. *Commonwealth* v. *Morrison,* 266 Pa. 223. This exception is overruled.

The assignment of error under exception 45 is that the state was permitted to cross-examine its own expert, Dr. Ernest Quesnel. An examination of the record discloses that the question objected to by the defendant was not by way of cross-examination or impeachment, but merely an inquiry to secure a definition of a medical term used by the witness in answer to a prior question. This exception is overruled.

Exceptions 46 to 49, inclusive, relate to rulings of the court with reference to further testimony given by Dr. Quesnel, and exceptions 50 to 53, inclusive, relate to rulings of the court with reference to testimony presented by the state's expert witness, Dr. Vera M. Behrendt. From an examination of the record, we find no prejudicial error in any of these rulings, and these exceptions are over-ruled.

Exceptions 55 and 56 are to rulings of the court denying defendant's motions to instruct the jury to disregard certain statements made by the assistant attorney general during the course of his argument and to strike out certain portions of that argument. The record contains none of the argument of the defendant's counsel and only a portion of the argument of the assistant attorney general, which was taken down by the court stenographer after objection by the defendant's counsel to portions of the argument already made and which had not been previously taken down by the stenographer. In denying defendant's motion to instruct the jury to disregard certain portions of the argument, the court said: "I'll deny your motion. In my opinion the statements just referred to and just re-read by Mr. Smith are entirely proper."

We are controlled in reaching our decision on the merits of these exceptions by the stenographic record and we find therein no reversible error. The defendant claims that certain remarks of the assistant attorney general were inflammatory and highly prejudicial. From a careful reading of that portion of the state's argument which appears in the transcript and the observation of the trial justice above quoted, we are of the opinion that, considering the nature of the charge, such argument did not exceed the bounds of propriety.

An argument by the state that merely asks the jury to disregard emotions and not to base their verdict upon mercy is not improper. *McKenzie* v. *State*, 11 S.W.2d (Texas) 172. It is also a legitimate argument for a prosecuting

attorney to state that a failure to enforce the law begets lawlessness. *Adams* v. *State,* 165 Ark. 308.

The prosecutor may in effect tell the jury that the people look to them for protection against crime and may illustrate the effect of their verdict on the community or society generally with respect to obedience to, and enforcement of, the law. *People* v. *Caylor,* 386 Ill. 501. See also 23 C.J.S. Criminal Law §1107. Measured by the principles of law just stated, we find that so much of the argument of the assistant attorney general as the record discloses was not improper. Exceptions 55 and 56 are overruled.

Exceptions 57 to 61 inclusive are to the court's refusal to charge the jury as requested by the defendant, and exceptions 62 to 64 inclusive are to certain portions of the charge as given.

We have fully considered these two groups of exceptions and have carefully read the charge as given. The trial justice in a clear and comprehensive manner instructed the jury that they might return any of the following verdicts, namely, murder in the first degree, murder in the second degree, manslaughter, not guilty by reason of insanity, or not guilty. He defined the two degrees of murder, explaining that the distinction lay in the extent or degree of premeditation, as defined in previous decisions of this court. He distinguished murder and manslaughter, in that the first required premeditation, while the latter did not. The requests to charge, insofar as they have merit, were substantially covered by the charge as given. Taking the charge as a whole, we are of the opinion that it was fair and impartial and afforded the defendant every protection which the law requires. Exceptions 57 to 64 inclusive are overruled.

Exception 65 is to the decision of the trial justice denying defendant's motion for a new trial. Only the seventh ground of this motion requires discussion here. This ground was as follows: "That the defendant was absent from the court room for a period of time during the trial of this

cause on May 9, 1947 and that such absence violated the defendant's constitutional right to be present during every stage of the trial."

With reference to this claim the record discloses the following circumstances. During the closing address to the jury by the prosecutor, Archie Smith, the trial justice declared a recess, whereupon he and the jury retired. The defendant was then escorted from the courtroom. Up to that time she had been present at every stage of the proceedings and had been confronted by all witnesses appearing against her. When the court reconvened the trial justice requested Mr. Smith to continue. He resumed his address and spoke for a period of time stated by the trial justice in his rescript to be less than one minute. The court then noticing that the defendant was not present, although her counsel was seated at the counsel table, ordered Mr. Smith to halt his address until the defendant was escorted into the courtroom, which was stated by the trial justice in his rescript to be within a period of not over two minutes.

Upon her arrival and at the request of her counsel, the stenographer read in her presence that portion of the argument made by Mr. Smith during her brief absence. It consisted of only fifty-five words as follows: "His Honor undoubtedly will tell you that in a case of this sort there are five possible verdicts. Going down the line first degree murder, second degree murder, manslaughter, not guilty by reason of insanity, and not guilty. Mr. Foreman, ladies and gentlemen of the jury; If you believe that Julia Greene shot Virginia Boston - - - "

In these remarks no testimony or facts were mentioned, defendant's counsel made no motion for a mistrial and did not ask for an exception. His request for a repetition of Mr. Smith's statement in defendant's presence was granted. No question of confrontation by witnesses is involved. We agree with the general principle that an accused is entitled to be present in the courtroom at all

stages of the trial when charged with a criminal offense. This right is precious and should be enforced, but it should be kept within the limits of reason and common sense by sound judicial interpretation. In our opinion there was no irregularity in the proceedings amounting to prejudice or a violation of the constitutional rights of the defendant.

In denying the defendant's motion for a new trial, the trial justice in his rescript carefully and fully analyzed the evidence and stated that in his considered judgment the verdict was amply supported by the credible evidence, truly responded to the merits of the issues involved, and had his approval. Such a verdict, so approved, is entitled to great weight and will not be disturbed unless the decision is clearly wrong or unless it appears that the trial justice has overlooked or misconceived material evidence. *State* v. *Blood*, 70 R. I. 85; *State* v. *Prescott*, 70 R. I. 403. We have carefully considered his decision and all the evidence in this case, and we are of the opinion that in reaching his final conclusion he did not overlook or misconceive any material evidence, and that such decision is fully supported by the record. Exception 65 is overruled.

Exceptions not herein specifically treated by number have been examined and found to be without merit. Exceptions neither briefed nor argued are deemed to be waived.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for further proceedings.

*John H. Nolan*, Attorney General, *Archie Smith*, Assistant Attorney General, for State.

*William R. Goldberg*, for defendant.