Belknap,
No. 5741.

STATE

*v.*

MAURICE J. CHAREST.

STATE

*v.*

JAMES COSTA.

Argued September 5, 1968.
Decided October 31, 1968.

*George S. Pappagianis,* Attorney General, and *Henry F. Spaloss,* Assistant Attorney General (*Mr. Spaloss* orally), for the State.

*Leonard, Leonard & Prolman* (*Mr. Richard W. Leonard* orally), for the defendants.

PER CURIAM. Each indictment charged that the defendant "with force and arms did on or about the hour of 12:00 o'clock noon in the daytime of June 9, 1966 feloniously break into and enter the dwelling house of one Aime Ernest LaPlante of Laconia, New Hampshire situated at 69 Gilford Avenue . . . with intent to commit larceny therein." The indictments which described the offense in the words of RSA 583:4, in force at that time, were sufficient to inform each defendant of the nature and cause of the action with sufficient definiteness so he could prepare for trial. *State* v. *Charette,* 98 N. H. 477, 478; *State* v. *Goodwin,* 101 N. H. 252, 253.

The Trial Court could properly find the following facts on the evidence: Aime LaPlante, at about noon on June 9, 1966, came home for lunch at his first floor apartment which was occupied only by him and his wife, who was at work at that time. He entered the house through a cellar door and as he approached the cellar stairs he heard footsteps in the kitchen over his head. He then went out of the garage up into a piazza where through a bay window he saw two men, whom he later identified as the defendants, standing in the kitchen. He then entered his apartment, some of the doors of which he kept locked and all of which he had left closed, and went into the kitchen which was brightly lighted by the sun.

Standing within a few feet of the defendants, LaPlante asked them "if I could help them, who they were looking for. I had no answer . . . They didn't say a word . . . " but walked toward the side door entrance. "I stepped out onto the porch, raised my voice, still no answer." The men kept walking away and he followed them. They separated shortly thereafter and La-Plante continued after the one whom he later identified as Charest. The latter soon broke into "a dead run" after he had turned around to look at LaPlante and saw he was being followed. LaPlante then gave up the chase and concentrated on finding a police officer.

While looking into the kitchen through the bay window, again when he stood within a few feet of the men in the small kitchen, and as they walked away from his home, LaPlante had an opportunity to observe them, their size, general appearance, and the clothes which they wore.

When Sgt. Doherty picked him up in a patrol car, a few minutes after he had given up the chase, LaPlante described the men to him. Within a few minutes, as they cruised slowly past a store, Doherty "spotted" Charest on the sidewalk near the door of the store. He asked LaPlante if that was one of them. Upon receiving an affirmative answer, the officer stopped his cruiser. At this, Charest, who had removed the suit coat and tie which LaPlante had seen him wearing in the apartment kitchen, ran into the store. Doherty followed him, apprehended him and placed him under arrest.

At the time of the arrest, the officer "frisked" the defendant from the "outside" to see if he carried weapons. He then took Charest to the police station and there advised him fully of his rights. Charest assured Doherty that "he was well aware of his rights." Doherty then asked the prisoner to empty his pockets, which he did. Among other objects were an automobile registration certificate and two pieces of paper, one of which appeared to be on the stationery of the Barton Motel in Laconia. These papers listed the home address only of a number of prominent Laconia business people, but did not include LaPlante. In response to a question Charest denied to the police he had been in anyone's home anywhere.

On the strength of LaPlante's description of Costa, the other defendant, and the above registration certificate, Costa was apprehended traveling in Charest's gray 1960 Oldsmobile. Costa

had also removed the suit coat and tie which LaPlante had seen him wearing in the apartment kitchen. Costa was fully advised of his rights at the police station, of which he said he too was well aware, and a search followed which revealed nothing of evidentiary value.

Though neither defendant testified at the trial and no evidence was introduced in their behalf, their counsel brought out on cross-examination of Sgt. Doherty that they claimed to be salesmen selling coffee franchises and costume jewelry and that the list of names was given to them as those of prospective customers by a friend in Fall River, Massachusetts. Neither the friend nor any samples of jewelry or other indicia that they were selling anything was produced by the defense. Furthermore both defendants told police they arrived in Laconia on June 9, 1966, the day of the alleged crime, at 11:00 A.M. and denied having arrived on the 8th and staying overnight at Barton's Motel. The State, however, introduced a registration card from that Motel showing that "James Coster" registered there for a party of two on June 8, 1966.

The defendants contend that the search of Charest at the police station which produced the registration to his car and the two slips of paper with names and addresses of Laconia residents was illegal because it was too remote in time or place from his arrest and was not incident thereto. We disagree with this contention. After arresting Charest in the store, the lawfulness of which is not contested, Sgt. Doherty took him to the police station. Charest was asked there to empty his pockets which he did. This produced a wallet, two slips of paper with names of Laconia businessmen, previously mentioned, and the registration in Massachusetts of a 1960 gray Oldsmobile in the name of Charest. It was proper under these circumstances as an incident to his lawful arrest to require Charest to turn over the property he had on his person. *State* v. *Hutton,* 108 N. H. 279, 288; *State* v. *Garceau,* 108 N. H. 209, 210; *Preston* v. *United States,* 376 U. S. 364, 367; Annot. 19 A. L. R. 3d 729, 739-741, and cases cited. The police could properly examine these articles for whatever evidence of crime they might reveal. *Cotton* v. *United States,* 371 F. 2d 385, 392 (9th Cir. 1967).

The two lists of names so obtained, being the fruits of this lawful search incident to a lawful arrest, were properly admitted in evidence as bearing on the issue of the intent of the defendants

when they entered LaPlante's home. *Warden* v. *Hayden,* 387 U. S. 294, 302. The fact that the registration of Charest's car which was also obtained in this lawful search led to the arrest of defendant Costa cannot in any way invalidate the lawfulness of the latter's arrest, indictment or conviction. *State* v. *Hutton,* 108 N. H. 279, 289; *Warden* v. *Hayden, supra.*

Finally on the evidence of the entry into a stranger's home by two men who could be found to be the defendants, their refusal to explain their presence, their flight, and the unlikely and unsupported explanation offered as to their alleged purpose, the Trial Court could properly find beyond a reasonable doubt that these defendants broke and entered LaPlante's home intending to commit larceny. *State* v. *Wills,* 107 N. H. 107, 109, 110; *State* v. *Skillings,* 98 N. H. 203, 207, 208. Defendants' motions to dismiss the indictments were properly denied.

*Exceptions overruled.*

GRIMES, J., did not sit; the others concurred.