STATE

v.

William MUIR.

No. 80–507–M.P.

Supreme Court of Rhode Island.

July 17, 1981.

Dennis J. Roberts, II, Atty. Gen., Stephen R. Famiglietti, Asst. Atty. Gen., Kathryn A. Salmanson, Sp. Asst. Atty. Gen., for plaintiff-respondent.

William F. Reilly, Public Defender, Barbara Hurst, Asst. Public Defender, for defendant-petitioner.

## OPINION

BEVILACQUA, Chief Justice.

The defendant, William Muir, was indicted by a grand jury for the robbery of a branch of the Rhode Island Hospital Trust National Bank. After a jury trial in the Superior Court, the defendant was found guilty of the charge. A writ of certiorari was issued by this court on November 20, 1980, to review the proceedings below.[1]

On September 17, 1979, at approximately 2:50 p. m., the branch of the Rhode Island Hospital Trust National Bank situated on Reservoir Avenue, Cranston, Rhode Island, was held up. A lone male walked up to the teller Richard Caparotta and handed him a note that read, "This is a holdup. I have a gun. Put all big bills in a bag fast." By taking the money from his top drawer, the teller set off a silent alarm. He then placed $2,295 in a plastic shopping bag provided him by the thief. No words were exchanged between the teller and the thief, who then took the bag and walked out of the bank.

Head teller Michelle Bibeault observed the thief as he left the bank with the holdup money, which was clearly visible through the plastic shopping bag. She decided to follow him. Her testimony indicates that at times she was within ten feet of him. She kept him continuously in her sight until the police arrived. The thief was finally apprehended several blocks from the bank. He was cornered in a yard by the police. At that time, he dropped the bag and gave up. The bag contained both the stolen cash and a mask he had never used. Witnesses identified defendant as the thief. The defendant admitted that he was the man who had given the teller the note demanding the money.

The defendant, a forty-three-year-old man who had a guardian, testified that he got the idea from a television show and that his only reason for staging the holdup was to get enough money to pay his rent. He further stated that he did not intend to steal but that he knew the money did not belong to him. A friend had assisted him in preparing the holdup note, and defendant said that he intended to scare the teller at the time he handed him the note. The teller who was robbed testified that he was, in fact, scared at the time of the robbery.

The defendant, during the course of the trial, did not present any evidence to raise the defense that he lacked the capacity to commit the offense and thereby lacked the specific intent to steal.

The defendant presents two issues through his petition for certiorari: (1) whether the jury should have been instructed on the lesser-included offense of larceny; and (2) whether the jury should have been instructed that defendant's mental capacity was relevant to the issue of specific intent.

### I

The defendant initially contends that the lesser-included offense of larceny should have been submitted to the jury for consideration. The prosecution instead argues

---

1. Defendant failed to file a timely notice of appeal in accordance with the Rules of the Supreme Court. We therefore issued the writ of certiorari in accordance with our ruling in the case of *In re Caldarone*, 115 R.I. 316, 345 A.2d 871 (1975).

that defendant is precluded from raising the issue at this time because of his failure to object at the time the trial justice instructed the jury.

█ It is well settled that when review is sought in this court, we generally consider only those issues that have been raised in the court below. *State v. Giordano*, R.I., 413 A.2d 93 (1980). And in the absence of a showing that defendant either requested certain instructions or objected to their omission, he is precluded from asserting as error the trial court's failure to instruct as he may have desired. *Id.*, 413 A.2d at 94; *State v. Marrapese*, 116 R.I. 1, 351 A.2d 95 (1976); *State v. Bowden*, 113 R.I. 649, 324 A.2d 631 (1974).

█ In the instant case, defendant initially requested the trial justice to charge the jury that larceny was a lesser-included offense of robbery. Although the trial justice denied this request, defendant failed to object to the omission of the instruction until three days after the verdict. Nevertheless, we find that the initial request by defendant for this particular instruction was sufficient to preserve the issue for our consideration. *State v. Giordano, supra.*

We have held that robbery is the "felonious and forcible taking from the person of another of goods or money to any value by violence or putting him in fear," *State v. Reposa*, 99 R.I. 147, 149, 206 A.2d 213, 215 (1965) (*quoting* 4 Blackstone's Commentaries 241). Essentially, robbery requires an element of force and fear as well as "a specific intention to deprive another wholly and permanently of his property * * *." *Id.*

"In determining whether the jury should have been instructed on lesser included offenses, the specific question in this case is whether the evidence[,] according to any reasonable theory[,] presented a controversy as to whether the defendant's particular conduct constituted robbery or a lesser included offense." *Cordial v. State*, 389 So.2d 170, 173 (Ala.Cr.App.1980). It has been generally held that a defendant is entitled to a lesser-included-offense instruction when the evidence warrants it. *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980); *State v. Goff*, 107 R.I. 331, 267 A.2d 686 (1970); *Commonwealth v. Cofield*, 226 Pa.Super. 266, 307 A.2d 316 (1973); *Cordial v. State*, 389 So.2d 170 (Ala. Cr.App.1980). To charge on a point or issue that is unsupported by any evidence is likely to confuse the jury. *See State v. Infantolino*, 116 R.I. 303, 307, 355 A.2d 722, 724–25 (1976); *Commonwealth v. Heckathorn*, 429 Pa. 534, 241 A.2d 97 (1968). Thus, the question is whether there is sufficient evidence to reduce the crime from robbery to larceny.

█ The defendant maintains that the victim, Caparotta, was not placed in fear. He argues that since the head teller, Bibeault, followed him after the robbery, it could be inferred that neither Bibeault nor Caparotta was scared. We disagree. There was substantial evidence presented from which the jurors could have inferred that Caparotta was put in fear. Caparotta himself testified that he was afraid. Additionally, defendant admitted that he wanted to scare the people at the bank and the note he handed Caparotta was in itself threatening. It stated that defendant had a gun, and it was reasonable for the teller to assume he was in personal danger. Because fear involves the reasonable perception of the *victim*, the actions of the head teller are irrelevant. *See Fairchild v. State*, 600 S.W.2d 16 (Ark.1980). Moreover, a lesser-included offense should not go to the jury unless the element that distinguishes the two offenses is disputed. *United States v. Harary*, 457 F.2d 471 (2d Cir. 1972). The testimony of the teller that he was in fear was uncontradicted. The defendant's defense did not place this fact in dispute.

The record before us is devoid of evidence that would have supported a conviction for the lesser-included offense of larceny independent of the elements common to both robbery and larceny. To have given the instruction requested would have led to speculation without foundation in the evidence. *Lightfoot v. United States*, 378 A.2d 670 (D.C.App.1977).

## II

The remaining issue is whether the trial justice should have instructed the jury on defendant's mental capacity.

 If no motion is made to determine a defendant's present sanity, it is not error if the trial justice fails to order a sanity hearing for defendant.[2] However, a defendant "is not responsible for criminal conduct if at the time of such conduct, as a result of mental disease or defect, his capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law is so substantially impaired that he cannot justly be held responsible." *State v. Johnson*, R.I., 399 A.2d 469, 476 (1979). This test for criminal responsibility must be contrasted with the diminished-capacity doctrine. Under this doctrine, a defendant does not possess sufficient mental capacity to form the requisite mens rea that is a necessary element of a specific-intent crime. *State v. Correra*, 430 A.2d 1251 at 1253–54 (R.I.1981); *State v. Doyon*, R.I., 416 A.2d 130, 134 (1980). Although the state had the burden of proving the absence of diminished capacity by proving defendant had the specific intent to commit the robbery, defendant must, nonetheless, initially raise this defense at trial. *See State v. Correra*, 430 A.2d at 1255; *State v. Johnson*, R.I., 399 A.2d 469 (1979).

 In this case, the defense of diminished capacity was not raised and counsel specifically denied that defendant was relying on it.[3] When defendant took the stand, he did not introduce this defense. Unless the defendant asserts and raises such issues in the court below, we generally shall not consider them on review. *State v. Pope*, R.I., 414 A.2d 781 (1981); *State v. Giordano*, R.I., 413 A.2d 93 (1980). It is only in certain limited circumstances that we shall re-

view alleged deprivation of basic constitutional rights for the first time on appeal. *State v. Robalewski*, R.I., 418 A.2d 817 (1980); *State v. McGehearty*, R.I., 394 A.2d 1348 (1978). This petition does not present such a case. The trial justice specifically directed trial counsel's attention to the defense of diminished capacity. The defendant clearly and unequivocally asserted that this was not the theory of his case and that he did not intend to raise this defense.

The defendant was given every opportunity to raise such a defense and failed to do so. We therefore are of the opinion that the defendant does not come within the circumstances that would justify review.

The defendant's petition is denied and dismissed, the writ previously issued is quashed, and the judgment of conviction is affirmed.

---

2. *Cf. People v. Rodriquez*, 272 Cal.App.2d 80, 76 Cal.Rptr. 818 (1969). (Defendant Rodriquez had been initially certified as sane. However, the defendant's counsel later raised the question of his mental condition. Since counsel's doubts did not crystalize into a motion, a new determination of sanity was not required).

3. "The Court: You're not going to offer to show that he had taken some intoxicating beverages or was under the influence of drugs or was in some other way suffering from a diminished capacity to form an intent? "Mr. Clemons: No, Your Honor. "The Court: Mr. Casparian? "Mr. Casparian: No, Your Honor."