STATE

v.

Thomas H. AUSTIN.

No. 81–357–C.A.

Supreme Court of Rhode Island.

June 21, 1983.

Dennis J. Roberts II, Atty. Gen., Barry N. Capalbo, Sp. Asst. Atty. Gen., for plaintiff.

Robert B. Mann, Providence, for defendant.

## OPINION

BEVILACQUA, Chief Justice.

The defendant, Thomas Austin, was tried and convicted before a jury in the Washington County Superior Court on an information charging him with breaking and entering a business establishment in the nighttime with intent to commit larceny on May 14, 1977, in violation of G.L. 1956 (1969 Reenactment) § 11–8–4. His motion for a new trial was denied, and he is now before us on appeal and assigns as error certain evidentiary and other rulings.

The record discloses that at approximately 3:45 a.m., on May 14, 1977, Patrolman Glen Browning, in response to a silent alarm, proceeded to the Twin Willows Lounge, located on Boston Neck Road in Narragansett, Rhode Island. He spotted a figure inside the building and, after calling for assistance, drove to the rear of the lounge where he saw two people emerge through a broken sliding glass door. Browning pursued them on foot as they fled to the front of the building and onto Boston Neck Road.

After a short distance one suspect ran off the road into a wooded area while the other suspect continued his flight down the road even after Browning had identified himself and fired a warning shot. The patrolman apprehended the second suspect when he turned off the road into the woods. This suspect, subsequently identified as defendant Thomas Austin, was placed under arrest and handcuffed.

Browning then escorted Austin back toward the lounge. When the patrolman turned away from Austin to assist other police officers in apprehending the other suspect, Austin fled. The police recaptured him, still handcuffed, approximately four hours later in the vicinity of the lounge.

### I

The defendant initially claims that the trial justice erred in denying his motion to dismiss the charge because of a lack of a speedy trial, in violation of the Sixth Amendment to the United States Constitution and art. I, sec. 10, of the Rhode Island Constitution, which guarantee a defendant a speedy public trial. Alternatively, defendant contends that dismissal was warranted under Rule 48(b) of the Superior Court Rules of Criminal Procedure because of unnecessary delay in bringing him to trial.

Although a speedy trial is guaranteed by both Federal and State Constitutions, a court must determine if and when the accused is denied this "fundamental right." In judging whether there has been a violation of this constitutional right of the accused, the court must consider the criteria set out by the Supreme Court of the United States in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). *See Tate v. Howard,* 110 R.I. 641, 296 A.2d 19 (1972). The four factors to be considered are (1) the length of the delay, (2) the reason for the delay, (3) the assertion of the right by the accused, and (4) the prejudice to the defendant caused by the delay. *Barker v. Wingo,* 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 117. Accordingly, we shall analyze defendant's claim in light of these four factors.

### A. Length of the Delay

The time that elapsed between defendant's arraignment and his trial was over three and one-half years. Needless to say, all parties agree that the length of the

delay warrants an examination of the remaining three factors.

### B. Reason for the Delay

The defendant emphatically asserts that none of the delay is attributable to him. However, the record indicates otherwise. After reviewing the circumstances of this case, we conclude that defendant contributed to the delay in two ways.

First, the case was continued several times at the request of a private attorney, on behalf of defendant. The defendant, however, argues that because his attorney never received an order of appointment from the court and never filed an entry of appearance, the attorney's actions and the delay resulting therefrom cannot be attributable to him. These arguments are without merit.

The record shows that initially the court referred defendant to the Public Defender, who subsequently referred him to a private attorney because of the conflict of interest arising out of the Public Defender's representation of a codefendant. The defendant met with the attorney and agreed to have him as his counsel. Thereafter, the Attorney General's office and the Superior Court dealt with the attorney as defendant's counsel from 1977 to 1980. During this period, the attorney requested continuances on defendant's behalf and delayed the progress of this case several times when conflicts arose in his trial schedule. In the latter part of 1980, the attorney apparently dropped out of the case and defendant was without counsel. The defendant was again referred to the Public Defender. After the Public Defender reestablished a conflict of interest, the court referred defendant to another private attorney, who ultimately represented defendant at trial.

■ The defendant attempts to divorce himself from the actions of the attorney he was initially referred to by relying on the lack of an entry of appearance by him. The

defendant's reliance on this technicality is misplaced.[1] The attorney-client relationship does not arise solely by virtue of the filing of an entry of appearance. Rather, it is the product of an agreement of the parties and may be implied from their conduct. *See State v. Cline,* R.I., 405 A.2d 1192, 1199 (1979). A review of the record discloses that an agreement did exist between defendant and the attorney, and the existence of an attorney-client relationship may reasonably be implied from their conduct. This court has previously indicated that when an attorney-client relationship exists, the client may not pick and choose which of his attorney's actions shall bind him. *See State v. Carvalho,* R.I., 450 A.2d 1102, 1104 (1982); cf. *Brown v. State,* 328 So.2d 497 (Fla.App.1976) (per curiam) (right to speedy trial waived when defendant's attorney requests continuance with or without consent and knowledge of defendant); *People v. Steele,* 127 Ill.App.2d 366, 262 N.E.2d 269 (1970) (defendant bound by actions of attorney in requesting continuances thereby delaying trial though defendant never consented to requests). Therefore, defendant may not now divorce himself from his attorney's actions in contributing to the delay by requesting several continuances.

Furthermore, during the time between arraignment and trial on the charges in this case, defendant was in and out of court several times on other criminal charges. The defendant is responsible for any delay resulting from the indictment and trial of these other criminal matters. *See State v. Anthony,* R.I., 448 A.2d 744, 749 (1982).

■ The record discloses other factors contributing to the delay, such as the summer recess and the crowded docket. However, such factors are neutral and not weighed against the state as heavily as tactically motivated delays. *See Barker v. Wingo,* 407 U.S. at 531, 92 S.Ct. at 2192, 33

---

1. This conclusion is not to be construed as condoning the attorney's failure to enter an appearance. On the contrary, all attorneys are reminded that an entry of appearance should be filed immediately after undertaking representation of a party. Compliance with this requirement will serve to prevent situations such as the case at bar from recurring.

L.Ed.2d at 117; *State v. Anthony,* R.I., 448 A.2d at 750.

### C. Assertion of the Right

An examination of the record reveals minimal effort on the part of defendant to make his desire for a speedy trial known to the court until the latter part of 1980. In 1977, at defendant's arraignment, defendant made an oral request for a speedy trial. No further oral or written requests were made until October of 1980 when defendant began to express orally his desire for a speedy trial each time he appeared in court. No written request was ever filed by an attorney for defendant.[2] The defendant contends that he did not make any request or motion during this period because he thought the case had been dismissed. There is no basis for defendant's belief because his case was regularly assigned and reassigned on the calendar and no notice of dismissal was ever sent out.

The facts that defendant never made a written demand and that over three years elapsed between defendant's initial oral request for a speedy trial and any further demands clearly demonstrate a lack of effort on defendant's part in asserting his right. We cannot say that defendant's conduct constituted the "banging on the courthouse doors" that we found persuasive in *Tate v. Howard,* 110 R.I. 641, 656, 296 A.2d 19, 27 (1972). *See State v. Allan,* R.I., 433 A.2d 222, 224 (1981) (speedy-trial motion filed twelve days after arraignment and not renewed until after defendant called case ready for trial not sufficiently aggressive assertion of right); *State v. DeMasi,* R.I., 419 A.2d 285, 290 (1980) (oral motion for speedy trial one month after indictment and written motion to dismiss for lack of speedy trial twenty months later not persuasive). The lack of aggressive demand for a speedy trial does not alone constitute a waiver, but it is an important factor that militates against defendant's position, particularly when defendant is at least partially responsible for the delay. *See State v. Anthony,* R.I., 448 A.2d at 750.

### D. Prejudice to Defendant

The defendant asserts that the delay prevented a necessary jury view because, during the period between the alleged crime and the trial, structural changes had been made on the Twin Willows because of a fire. The defendant also contends that the owner of the lounge suffered some loss of memory and one of his witnesses was unavailable as a result of the delay.

We cannot find any prejudice to defendant as a result of the delay. In light of the testimony received and the circumstances of the alleged crime, a view of the scene was not necessary. The owner of the lounge had some difficulty in recalling certain facts, but his testimony, or lack thereof, on these subjects did not substantially prejudice the defense. The loss of the witness cannot be prejudicial because defendant in fact waived the appearance of that witness during trial.

In determining whether defendant's right to a speedy trial has been abridged, we must balance all of the above factors and consider them as a whole. *See Barker v. Wingo,* 407 U.S. at 533, 92 S.Ct. at 2193, 33 L.Ed.2d at 118; *State v. Anthony,* R.I., 448 A.2d at 751–52. Based on the foregoing discussion of each factor, our conclusion is that defendant's right to a speedy trial has not been abridged.

■ In addition to defendant's speedy-trial claim on constitutional grounds, defendant contends that the trial justice erred in denying defendant's motion to dismiss under Rule 48(b) of the Superior Court Rules of Criminal Procedure.[3] The defendant

---

**2.** The defendant contends that we should excuse the lack of any written demand for a speedy trial because defendant was not represented by counsel during the time between his arraignment and a few months before trial. This argument is without merit in light of our conclusion that an attorney-client relationship existed for most of this period between defendant and the attorney to whom he was referred initially by the Public Defender.

**3.** The rule provides for dismissal of an indictment, information, or complaint by the court if

claims that he is not responsible for the delay and that the state failed to establish a legitimate justification for the delay. Therefore, the trial justice allegedly abused his discretion in denying his motion to dismiss.

Rule 48(b) is broader than the constitutional right to a speedy trial; and even though the constitutional right to a speedy trial has not been violated, a dismissal may still be granted under this rule. A motion to dismiss under Rule 48(b) is directed to the sound discretion of the trial justice. This court will not disturb his decision absent a showing of abuse of discretion. *State v. Dionne,* R.I., 442 A.2d 876, 881 (1982); *State v. Paquette,* 117 R.I. 505, 511, 368 A.2d 566, 569 (1977). In the consideration of such a motion, the only issue for determination is whether the delay was unnecessary. *State v. Dionne,* R.I., 442 A.2d at 881; *State v. Paquette,* 117 R.I. at 511, 368 A.2d at 569. Once the defendant shows that none of the delay is attributable to him, he has established a prima facie case of unnecessary delay. The burden is then on the state to show some justification for the delay. *State v. Brady,* R.I., 436 A.2d 717, 718 (1981); *State v. Paquette,* 117 R.I. at 511, 368 A.2d at 569.

We conclude, however, that defendant was not free from fault regarding the delay. The record clearly demonstrates that defendant had an attorney-client relationship with an attorney during most of the delay period. Therefore, defendant is at least partially responsible for the delay by reason of his attorney's actions in seeking continuances and defendant's appearances in court regarding other criminal charges brought against him. Additionally, defendant consistently stated that he would not go to trial without counsel, as is his right. The state cannot force defendant to go to trial without an attorney, nor can the state force an attorney to represent defendant. Under the circumstances of this case the state cannot bear all of the responsibility for the problems and confusion revolving around the retention of counsel for defendant. Consequently, defendant has not established a prima facie case of unnecessary delay.

In light of the foregoing, we conclude that the trial justice did not abuse his discretion in denying defendant's motion to dismiss under Rule 48(b).

II

The defendant alleges that the trial justice erred in denying his motion for acquittal on two grounds. The defendant was charged with breaking into and entering a business establishment pursuant to § 11–8–4.[4] Initially, defendant contends that there was insufficient evidence to establish intent to commit larceny beyond a reasonable doubt. We disagree. In order to sustain a conviction under § 11–8–4, the state must prove four elements beyond a reasonable doubt. They are a break, entry, nighttime, and the intent to commit larceny. *State v. DiMuccio,* R.I., 431 A.2d 1212, 1214 (1981).

In considering a motion for judgment of acquittal, the trial justice and this court on appeal are bound to review the evidence in the light most favorable to the prosecution and draw all reasonable inferences therefrom consistent with the accused's guilt. Neither the weight of the evidence nor the credibility of the witnesses shall be considered. *State v. Darcy,* R.I., 442 A.2d 900, 901 (1982); *State v. Gazerro,* R.I., 420 A.2d 816, 827 (1980). If the evidence, when viewed in this manner, is suffi-

---

there has been unnecessary delay in bringing a defendant to trial. Super.R.Crim.P. 48(b).

4. General Laws 1956 (1981 Reenactment) § 11–8–4 provides:

"Every person who shall break and enter any bank, shop, office or warehouse, not adjoining to or occupied as a dwelling house, any meeting house, church, chapel, court-house, town house, college, academy, schoolhouse, library or other building erected for public use or occupied for any public purpose or any ship or vessel, in the nighttime, with intent to commit murder, rape, robbery or larceny, shall be imprisoned not exceeding ten (10) years."

cient to establish the accused's guilt beyond a reasonable doubt, the motion must be denied. *State v. Darcy,* R.I., 442 A.2d at 901–02.

■ The evidence clearly establishes that an illegal break and entry occurred and that several coin-operated bowling machines located in the building were broken. We find that this evidence clearly warrants the inference that defendant entered the Twin Willows with the intent to steal. *See State v. Johnson,* 116 R.I. 449, 454–55, 358 A.2d 370, 373–74 (1976); *accord Commonwealth v. Ronchetti,* 333 Mass. 78, 128 N.E.2d 334 (1955); *State v. Charest,* 109 N.H. 201, 247 A.2d 515 (1968).

Next, defendant, in support of his motion for judgment of acquittal, argues that the building broken into is not within the provisions of § 11–8–4.

Clearly, in order to prosecute defendant under § 11–8–4, the building allegedly broken into must fall within the terms of the statute. The Twin Willows is a nightclub or lounge. Section 11–8–4, entitled "Breaking and entering business place, public building, or ship at night with felonious intent," prohibits breaking into and entering any

> "bank, shop, office or warehouse, not adjoining to or occupied as a dwelling house, any meeting house, church, chapel, courthouse, town house, college, academy, schoolhouse, library or other building erected for public use or occupied for any public purpose * * *."

■ We recognize that this is a penal statute and therefore must be strictly construed. *See State v. Amaro,* R.I., 448 A.2d 1257, 1259 (1982); *State v. Dussault,* 121 R.I. 751, 753, 403 A.2d 244, 246 (1979). Nevertheless, we shall not impose so restrictive an interpretation that a clear legislative intent is thwarted. *See State v. Dus-*

sault, 121 R.I. at 754, 403 A.2d at 246; *DeFusco v. Brophy,* 112 R.I. 461, 464, 311 A.2d 286, 288 (1973). Because § 11–8–4 is only one part of a chapter of provisions dealing with burglary and breaking and entering, we must construe § 11–8–4 with reference to these other provisions. *See Pickering v. Pickering,* 64 R.I. 112, 116, 10 A.2d 721, 723 (1940).

Employing these principles, we conclude that the Twin Willows falls within the terms of § 11–8–4. The term "shop" in the statute refers to a business establishment. The Twin Willows is a form of business establishment in which certain types of business transactions are conducted. To give the statute the restrictive meaning defendant advocates would leave these establishments without recourse for this offense because no other provision in the chapter would apply. Clearly, the Legislature did not intend such a result. Additionally, the title of § 11–8–4 refers to the break and entry of a *business place,* public building, or ship.[5] Therefore, the trial justice correctly rejected defendant's argument that the Twin Willows is not within the terms of § 11–8–4 and denied his motion for acquittal.

Consequently, we conclude that the trial justice correctly applied the appropriate standard in rendering his decision on defendant's motion for acquittal and that the record clearly supports his denial of that motion.

III

The defendant next challenges the trial justice's denial of his motion for a new trial. The defendant, in support of this motion, presents the same issues and arguments submitted at the time he made his motion for judgment of acquittal. In view of our own disposition and conclusions with refer-

5. We recognize that as a general rule, titles do not control the meaning of statutes. *See Orthopedic Specialists, Inc. v. Great Atlantic & Pacific Tea Co.,* 120 R.I. 378, 383–84, 388 A.2d 352, 355 (1978); 2A Sands, *Statutes and Statutory Construction* § 47.03 (4th ed. 1973). However, when there is doubt as to the meaning of a statutory provision, the title may be referred to as a guide to the intent of the Legislature and accorded some weight in the interpretation. *Pickering v. Pickering,* 64 R.I. 112, 116, 10 A.2d 721, 723 (1940).

ence to the motion of judgment of acquittal, we find no error in the trial justice's denial of the motion for a new trial.

## IV

The defendant also contends that the trial justice erred in refusing to give an instruction on the lesser-included offense of malicious destruction of property.

■ It is well established that a party is entitled to a lesser-included-offense instruction when the evidence adduced at trial warrants it. *See State v. Malouin,* R.I., 433 A.2d 176, 178 (1981); *State v. Muir,* R.I., 432 A.2d 1173, 1175 (1981). However, the trial justice is not required to give the requested instruction when it is unsupported by any evidence. *Id.* 432 A.2d at 1175.

■ After examining the record in the present case, we find no evidence to warrant an instruction on vandalism. Vandalism primarily involves injury to or defacing of the exterior of a building. Testimony in this case revealed a broken glass door by which entry was gained, several coin-operated machines that had been pried open, and tables and chairs that were overturned. There was undisputed evidence to support each element of the offense charged, including intent to steal. Moreover, defendant's defense did not place any of these facts in dispute. Defense counsel attempted to show that this was a case of misidentification because the patrolman who spotted the suspects in the Twin Willows and pursued them lost sight of them for an instant, thereby mistaking Austin, who was in the area, as one of the persons who had fled the building. This defense of innocence is inconsistent with the requested instruction. If the jury believed defendant's theory, they would find him innocent. If not, he would be guilty of the offense charged.

For the foregoing reasons, we conclude that the trial justice did not err in denying defendant's request for an instruction on malicious destruction of property.

## V

■ The defendant next claims that he was denied his right to counsel because of the time that elapsed between his arraignment and the appointment of counsel for him.

The Sixth Amendment of the United States Constitution and art. I, sec. 10, of our State Constitution provide that an accused is entitled to the assistance of counsel at all critical stages of the criminal prosecution. *See United States v. Wade,* 388 U.S. 218, 224, 87 S.Ct. 1926, 1930, 18 L.Ed.2d 1149, 1156 (1967); *State v. Delahunt,* 121 R.I. 565, 571–72, 401 A.2d 1261, 1265 (1979). In the instant case, defendant had the assistance of competent counsel through arraignment, pretrial motions, trial, posttrial motions, sentencing, and appeal. Additionally, the record discloses that defendant was represented by an attorney for at least part of the period between arraignment and trial. Consequently, there is no basis for defendant's claim that he was denied his constitutional right to counsel.

## VI

■ The defendant next argues that the trial justice erred in denying defendant's request that a prosecution witness draw a sketch of the crime scene. At the start of defense counsel's cross-examination of the patrolman who first responded to the alarm at the Twin Willows, defendant asked that the patrolman draw a sketch of the scene. The trial justice denied the request because it would not be helpful to the jury. The defendant asserts that his right to cross-examine a witness was violated by this ruling.

■ The scope of cross-examination is subject to the exercise of the sound discretion of the trial justice. *State v. Anthony,* R.I., 422 A.2d 921, 924 (1980); *State v. Eckhart,* 117 R.I. 431, 435–36, 367 A.2d 1073, 1075 (1977). On appeal, our inquiry is limited to whether the trial justice abused that discretion. *State v. O'Brien,* R.I., 412 A.2d 231, 233 (1980); *Burns v. Janes,* 121 R.I. 343, 350, 398 A.2d 1125, 1128 (1979).

In the instant case, we find no abuse of discretion because we agree with the trial justice's reasoning that a sketch was unnecessary. The patrolman's testimony was very explicit and clear and sufficient to give the jury an understanding of the scene of the crime. Furthermore, defense counsel did exhaustively question the patrolman about the physical characteristics of the building and the surrounding area, the lighting conditions, and his observations. The trial justice gave defense counsel reasonable latitude in his cross-examination and therefore did not err in denying defendant's request that the patrolman draw a sketch of the area.

### VII

■ The next issue raised by defendant is that the trial justice abused his discretion in denying defendant's request for a view. The defendant asserts that the jury was denied any opportunity to gain an appreciation for the physical layout of the Twin Willows and the surrounding area. The trial justice denied defendant's request because the nature of the evidence did not warrant a view.

In regard to a request for a view, this court has stated that "[i]t is well settled that the taking of a view is addressed to the discretion of the court and, if in his judgment, a view will not aid or is not necessary to assist the jury in understanding the evidence, the trial justice's denial of such a request is rarely if ever open to question." *DiMaio v. DelSesto,* 102 R.I. 116, 120, 228 A.2d 861, 863 (1967).

After reviewing the record, we cannot say that the trial justice abused his discretion in denying defendant's motion for a view. As we stated above, the testimony in the instant case was sufficiently clear and uncomplicated for the jury to gain an adequate understanding of the physical layout of the Twin Willows and the surrounding area. Furthermore, the building had been altered structurally because of a fire that occurred between the time of the alleged break-in and the trial. Under the circumstances, a view was unnecessary and the denial of defendant's request was therefore not an abuse of discretion.

### VIII

■ Finally, defendant asserts that the trial justice erred in admitting into evidence two photographs as full exhibits. The photographs depicted two broken bowling machines, operated by coins, which were located at the Twin Willows and were allegedly damaged during the break-in. The defendant contends that there was no evidence indicating that the machines had not previously been broken and that therefore there is no evidence that the photographs depict something relevant to the issues in the case. On these grounds defendant argues that it was error to admit the photographs.

■ It is well established in this state that the question of the materiality or relevancy of photographs is a matter of judicial discretion. *State v. Kieon,* 93 R.I. 290, 295, 175 A.2d 284, 287 (1961); *State v. Greene,* 74 R.I. 437, 443, 60 A.2d 711, 715 (1948). Photographs of broken coin-operated bowling machines are clearly relevant to a charge of breaking and entering with intent to commit larceny as long as they are properly identified. Here, the owner of the Twin Willows identified the photographs as a fair and accurate representation of the interior of the Twin Willows after the break-in. Also, contrary to the defendant's assertion, the owner testified that the machines were not broken when he closed up for the evening. Therefore, a proper foundation was laid establishing the relevancy of the photographs. Consequently, the trial justice did not abuse his discretion in allowing the photographs to be admitted as full exhibits.

The appeal of the defendant is denied and dismissed, the judgment appealed from is affirmed, and the case is remanded to the Superior Court.