THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN R. MOORE, Defendant-Appellant.

Fourth District   No. 16158

Opinion filed November 26, 1980.

Donald R. Schuering, of Goehl, Adams & Schuering, of Quincy, for appellant.

John L. Harshman, State's Attorney, of Pittsfield (Gary J. Anderson and Denise M. Paul, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE WEBBER delivered the opinion of the court:

Defendant was convicted of the offense of solicitation to commit murder after a jury trial in the circuit court of Pike County in violation of section 8—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 8—1). He was afterwards sentenced to 10 years' imprisonment.

The evidence at trial was relatively brief and consisted principally of the testimony of an undercover agent for the criminal investigation division of the Illinois Department of Law Enforcement and certain tapes of conversations which the agent had with the defendant. These tapes were made pursuant to an eavesdropping authorization obtained from a circuit judge sitting in Pike County. Errors relating to the tapes and the authorization order are the principal contentions on appeal.

The undercover agent testified as to conversations which he had had with the defendant on October 23 and 24, 1978, in Pittsfield. The sum of the conversations was that defendant would pay the agent $2,500 to murder Michael Watson, who was then married to defendant's former wife. The agent and defendant were unknown to each other prior to this time, but the authorities had received information from other persons in Hannibal, Missouri, that defendant was known to be seeking someone to commit the homicide. On the basis of this information, the agent first called defendant at his place of business and made arrangements to meet him later in the day at a lounge in Pittsfield to discuss the matter further. After these further discussions on October 23 and 24, defendant was arrested for the offense charged.

During the further discussions the agent was equipped with an eavesdropping device secreted upon his body. No issue has been raised concerning the efficacy of the device except for an objection to the tapes made therefrom as being partially inaudible. The device picked up the conversations of the agent and defendant and broadcast them within a short range where they were recorded on the tapes by other agents stationed in a van nearby.

The tapes, which were introduced into evidence and played for the jury, essentially corroborated the agent's oral testimony. Defendant offered no evidence.

Defendant has raised a variety of issues on appeal, the first of which concerns the tapes and the method of their acquisition. The State's Attorney made application for the use of an eavesdropping device to a circuit judge sitting in Pike County under the provisions of article 108A of the Code of Criminal Procedure of 1963 (Code) (Ill. Rev. Stat. 1979, ch.

38, par. 108A—1 *et seq.*) and as indicated above, authority was granted and a written order entered thereon. Prior to trial defendant filed a motion seeking to quash that order and to suppress the tapes. The trial court denied the motion, and defendant assigns numerous errors in that ruling.

■■ Defendant first claims that the judge was without jurisdiction to enter the order since the facts relied upon by the affiant in making application occurred in Missouri. Defendant contends that only a Missouri court could enter the order. We do not agree. There is no such requirement in the statute whose principal emphasis is on the felony about to be committed, not on the place wherein any preliminaries have occurred.

Defendant's next argument is that there was insufficient information in the application to create the "reasonable cause" required by sections 108A—4(b) and (c) of the Code (Ill. Rev. Stat. 1979, ch. 38, pars. 108A—4(b) and (c)) as grounds for approval of the authorization.

The portion of the application in question reads as follows:

"* * * 3. The felony of Solicitation [MURDER] has been, is, or is about to be committed, such belief being based on the following facts: John R. Moore has in the past sixty days attempted to solicit someone to murder Michael Watson of Pittsfield, Illinois, and has made it known the offer is open and money is available for payment for said murder."

Analogizing to search warrant complaints, defendant claims that the foregoing indicates that the information has come from an informant, and it is so lacking in detail that the judge could not be informed of the underlying circumstances from which the informant drew his information and from which the affiant in the application could be certain of the credibility of the informant under the *Aguilar* test. (*Aguilar v. Texas* (1964), 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509.) We believe that there exists a fundamental difference between an application for a search warrant and an application for the use of an eavesdropping device.

Section 108—3 of the Code (Ill. Rev. Stat. 1979, ch. 38, par. 108—3) sets forth the grounds for a search warrant and if they are based on hearsay or upon information furnished by an informant, they must meet the *Aguilar* test. A defective complaint for a search warrant cannot be cured by extrinsic evidence. *People v. George* (1971), 49 Ill. 2d 372, 274 N.E.2d 26.

On the other hand, section 108A—3(b) of the Code (Ill. Rev. Stat. 1979, ch. 38, par. 108A—3(b)) specifically contemplates and authorizes the judge to whom an application for use of an eavesdropping device is made to request "additional testimony, witnesses, or evidence in support of the application." In the instant case the record is clear that such

additional testimony was taken before the issuing judge, but it has not been preserved in the record. Indeed, at the hearing on the motion to suppress defendant objected when the State's Attorney attempted to elicit a reiteration of such testimony from the witness who gave it before the issuing judge.

It would thus appear that an application for use of an eavesdropping device, unlike an application for a search warrant, may plead only the ultimate fact with the specifics to be supplied with additional testimony, witnesses or evidence, in the same manner that an indictment or information supplies only the ultimate fact to be fleshed out with further evidence at trial.

■■ ■ In proceeding on a motion to suppress, the burden is on the defendant to establish illegality. (*People v. Stinson* (1977), 47 Ill. App. 3d 910, 913, 365 N.E.2d 467.) By failing to preserve the record and, in fact, objecting to the effort of the State to present it by secondary means, the defendant cannot now be heard to say that the action of the issuing judge was improper.

■■ Moreover, the order of the issuing judge which was attached to the motion to suppress, recites that he was "advised in the premises" and then made findings of fact. This, coupled with the admitted fact that evidence was taken before him, leads to the presumption that the proceedings, and conclusions, were valid. The record imports verity. *People v. Sigafus* (1969), 42 Ill. 2d 272, 246 N.E.2d 255.

Defendant makes several additional objections to the order authorizing the use of the eavesdropping device, none of which we find meritorious. He argues that the consent of one party to the conversation must be obtained before the order is obtained. We find no such requirement. Section 108A—4(a) of the Code (Ill. Rev. Stat. 1979, ch. 38, par. 108A—4(a) reads in the alternative: "one party to the conversation has or will have consented * * *." The order finds that Terry Lucas, a party to the conversations (the undercover agent) has consented.

Next, defendant argues that the order failed to specify the area to be monitored and the persons to do the monitoring. He again analogizes to the specificity required for search warrants. We find nothing in the statute which so requires, and the supreme court has rejected the argument. *People v. Kezerian* (1979), 77 Ill. 2d 121, 395 N.E.2d 551.

Defendant further argues that he discerns in the order an invalid extension beyond the 10 days authorized by section 108A—5(b) of the Code. He finds this in the following language in the adjudicatory portion of the order: "* * * 2. The period of this authorization shall be from October 23, 1978, to November 1, 1978, and shall not automatically terminate when the described conversations have been first obtained." We do not so view the language. The limitation is clearly for 10 days, and

the additional wordage simply acknowledges the common-sense approach that several conversations may take place during that period. The language governing extension is found in section 108A—4(d) of the Code, and this language is conspicuously missing from the order.

Defendant next argues that the testimony of the agent should have been suppressed since it was "fruits of the poisonous tree" under *Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407. Since we hold the authorization order to be valid, the doctrine does not apply. Moreover, the record indicates that the agent made an initial connection with defendant prior to, and independent of, the authorization.

■■ Finally, defendant complains that the trial court should have allowed his motion *in limine* seeking to prevent the introduction of the tapes since portions of them were inaudible. This is a matter of discretion with the trial court. (*People v. Spicer* (1978), 61 Ill. App. 3d 748, 378 N.E.2d 169, *rev'd on other grounds* (1979), 79 Ill. 2d 173.) The record discloses that the trial court listened to the tapes and found them admissible. We, too, have listened and find that while some portions are garbled, the significant parts are clear. There was no abuse of discretion.

We turn now, somewhat more briefly, to other issues raised by defendant. First, he contends that the trial court abused its discretion in refusing a change of venue based on prejudice of the inhabitants arising out of publicity in the area. We have examined the materials submitted in support of the motion and find them factual and noninflammatory. The last one appeared about five months before trial. The trial court denied the motion but as part of its ruling indicated that it would reconsider and grant the change *sua sponte* if a fair and impartial jury could not be obtained in Pike County. In our judgment, and in the opinions of prior authorities, the *voir dire* is the ultimate proof of local prejudice. (*People v. Kurtz* (1967), 37 Ill. 2d 103, 224 N.E.2d 817.) Of those chosen in the instant case, five had heard nothing about the case, and four others had heard only that the trial and jury selection were about to begin. Each side exercised all of its peremptory challenges and defendant was successful in all his challenges for cause after his peremptories were exhausted.

Defendant's next complaint concerns part of the State's Attorney's opening statement, and the refusal of the trial court to grant a mistrial based upon it. In opening, the State's Attorney told the jury that a witness would be produced to show that defendant had solicited him to commit murder prior to the date alleged in the information. Defendant argues that the prosecutor knew that such testimony would be inadmissible as hearsay, and therefore demonstrated bad faith on the part of the prosecutor.

The witness was Terry Johnson. He was produced and testified that

Jerry Greenwood came to his home in Hannibal, Missouri, in September 1978 to talk to him. Later they met again in Greenwood's home, at which time Greenwood handed Johnson a note bearing a man's name and address. Johnson said he knew what it was about because of his prior conversation with Greenwood. During this time defendant was seated in his car outside. About 30 minutes later defendant came in and asked Johnson to go "play foosball, or something with him." Johnson "reckoned" that .the reason for the invitation by defendant was to discuss the note and matters relating to it.

When this testimony was offered, the trial court sustained an objection and instructed the jury to disregard it. The prosecutor did not pursue the matter further.

■■ We cannot say that the opening statement constituted bad faith as a matter of law. It was at least debatable whether the testimony would be admissible as being explanatory of the reason why the investigation centered on defendant. Furthermore, the prosecutor knew that the tapes, if admissible, would show that defendant himself spoke of offering someone else $3,000 for the job. Of course, both the testimony and the tapes must be viewed from the position of the opening statement, but at that time both items of evidence were potentially admissible. Under these circumstances, bad faith was not shown and the trial court did not abuse its discretion in refusing a mistrial. *People v. DeBord* (1978), 61 Ill. App. 3d 239, 377 N.E.2d 1308.

Defendant further argues that it was error for the trial court not to strike all of Johnson's testimony. As indicated above, the court did instruct the jury to disregard it. Defendant claims it showed prior criminal activity and thus was prejudicial. Doubtless, it would have been better for the trial court to strike the testimony but we find the error harmless. In *People v. Wright* (1974), 56 Ill. 2d 523, 533-34, 309 N.E.2d 537, the supreme court said:

> "* * * A trial of this duration may not be free of evidentiary error. However, we do not find any error which could have resulted in a denial of real justice or in a jury verdict which could have been the result of such error. There is no basis for reversal in the evidentiary issues. 'It is not the policy of this court to reverse a judgment merely because error has been committed, unless it appears that real justice has been denied thereby or that the verdict of the jury may have resulted from such error.' *People v. Cavanaugh* (1958), 13 Ill. 2d 491, 492."

Defendant also argues that the State did not prove beyond a reasonable doubt that he was not entrapped. We do not agree. The tapes demonstrate predisposition. Defendant told the agent in detail how he wanted the murder accomplished and how he himself intended to create

an alibi. He also acknowledged that although he was offering only $2,500 to the agent, he had previously offered $3,000 and had someone else on a "straight deal." Predisposition was present and all that the agent did was to offer the opportunity. *People v. Natoli* (1979), 70 Ill. App. 3d 131, 387 N.E.2d 1096; *People v. Outten* (1958), 13 Ill. 2d 21, 147 N.E.2d 284.

■■ Defendant next objects to a portion of the prosecutor's closing argument in which he stated that the agent had received prior information that defendant wanted someone "hit." The trial court promptly sustained an objection and instructed the jury to disregard the remark. The prosecutor made no further references to it. Under the facts of this case, we believe that this was sufficient to cure the matter. While the language is overblown, it is supported by the record and defendant opened the door to it by asserting the entrapment defense.

■■ Defendant cites as error the refusal of the trial court to give the circumstantial evidence instruction. (IPI Criminal No. 3.02.) He argues that intent was circumstantial and therefore he was entitled to the instruction. While this is probably the case, we view the error as harmless. The jury was fully instructed on the elements of the offense and on the defense of entrapment. If it believed defendant was not predisposed to commit the offense or that the agent induced him, it would have found him not guilty. Even if evidence of intent is viewed as circumstantial, in the instant case, it would seem more likely to support a finding of guilty than not guilty.

Finally, defendant complains of certain remarks of the trial court at the sentencing hearing concerning possible good time in the penitentiary. From these he deduces that the court did not intend to sentence him to 10 years. We have reviewed all of the remarks by the court and find the contention without basis. The court spoke at some length concerning defendant's manipulative personality and failure to accept responsibility for his acts. By referring to good time, the court was in effect admonishing defendant to make an attempt at rehabilitation and thus gain early release.

Defendant also complains of the length of the sentence. The offense here is a Class X felony (Ill. Rev. Stat. 1979, ch. 38, par. 8—4(c)(1)) with a range of 6 to 30 years. The sentence of 10 years is quite obviously on the lower end of the scale, and we will not interfere. *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

For all the foregoing reasons, judgment and sentence of the circuit court of Pike County are affirmed.

Affirmed.

GREEN and CRAVEN, JJ., concur.