STATE

v.

Angel Luis COLLAZO.

No. 80-557-C.A.

Supreme Court of Rhode Island.

June 3, 1982.

Reargument Denied June 17, 1982.

Dennis J. Roberts II, Atty. Gen., Joel D. Landry, Asst. Atty. Gen., for plaintiff.

William F. Reilly, Public Defender, Barbara Hurst, Asst. Public Defender, for defendant.

OPINION

BEVILACQUA, Chief Justice.

The defendant, Angel Luis Collazo, was indicted by a grand jury on October 26, 1979. The indictment charged him with the murder of Juan D. Perez on or about September 15, 1979. The case was tried before a justice of the Superior Court sitting with a jury which returned a verdict of guilty of second-degree murder against the defendant. The defendant's appeal from the judgment is now before us.

The following evidence was adduced at trial. On September 15, 1979, the Pawtucket police received a telephone call at 8:24 p. m. indicating that shots had been fired at the Crook Manor Housing Project in the city of Pawtucket. Responding to the call, the police went to Crook Manor where they found a body, later identified as Juan D. Perez (the victim), lying on the sidewalk under a tree located between building No. 60 and No. 100. A trail of blood led from the body to the middle of the street and playing cards were strewn about the area. The police did not find any weapon in the vicinity. It was later established that the victim died of three gunshot wounds fired at extremely close range, one striking him in the jaw and the other two in the chest. Medical testimony further established that the victim was drunk at the time of his death.

Both the victim and defendant resided at Crook Manor. On September 15, 1979, at approximately 4:30 p. m., the victim was playing cards on the street outside the Manor with his friends, Roberto Santiago and William Cruz, who also lived at the Manor. Cruz testified that after playing cards for approximately forty-five minutes, the three men went drinking until about 6:00 p. m. and then had dinner at the victim's house. Cruz then left and went home, where he watched television until about 8:30 p. m. when he heard three shots. Upon hearing the shots, Cruz went outside and found the victim lying on the ground. Cruz then called an ambulance. Cruz further testified that there was an ongoing dispute between the victim and defendant arising out of allegations made by the victim that defendant had stolen money from him during a card game. However, Cruz did not witness any argument between the two on the day in question. Nevertheless, he did testify that both the victim and defendant had been drinking that day.

Roberto Santiago testified that he went home after dinner on the day in question and did not come outside until he heard three shots and saw the victim lying on the ground. Santiago further stated that he had seen the victim drinking a beer during the card game and that during such time he saw defendant drinking and watching the game from across the street. Santiago also testified that he did not know of any animosity between the victim and defendant, that the victim was in good humor on the day of the killing, and that as far as he knew defendant did not have a weapon.

The defendant's sister, Rosalina Collazo, also testified. She stated that on September 15, 1979, defendant came to her house very drunk and babbling about having shot

the victim. The defendant told his sister that the victim kept punching him and asking him to fight. The defendant also said to his sister that when the victim approached him with a "cuchilla" (a razorblade or knife), defendant fired at the victim to protect himself. The defendant gave Rosalina the gun he used in the killing and she drove him to a pizza parlor. Rosalina then went home, called the police, and gave them the pistol. She drove with the police to Providence where they ultimately located and arrested defendant.

The two Pawtucket police officers who had arrested defendant gave the following testimony. When defendant was placed in the cruiser, he was very emotional and said, "Man, I had to kill him. I had to kill him. He had a knife. It was him or me." At the police station, defendant gave a full oral statement to the same effect. Specifically, defendant stated that early in the day in question he bought the gun used to kill the victim from a person on Weeden Street in Pawtucket. At about 8:30 p. m., defendant was standing in front of his Crook Manor apartment with the gun in his belt. According to defendant, the victim came over to him and an argument started between them. The victim, who appeared to have a knife, swung at defendant a few times. The defendant then took out the gun and fired three times at the victim.

In challenging the judgment, defendant presents three questions: (1) whether the remarks made by the prosecutor in her opening statement constituted prejudicial error so as to violate defendant's due process rights and to deny defendant a fair trial; (2) whether the evidence is sufficient to support a verdict of guilty beyond a reasonable doubt; and (3) whether the trial justice erred in refusing to include instructions on self-defense and intoxication in the supplemental instructions to the jury.

I

The defendant argues that the trial justice erred in denying defendant's motion to pass the case and to declare a mistrial after the prosecutor made the following reference in her opening statement to a separate criminal act.

> "The State will also prove, members of the jury, that the murder weapon was the off-duty service revolver of a Providence policeman who lived in Pawtucket. On the day of the murder this officer was leaving his home, his apartment on Mineral Spring Avenue in the City of Pawtucket, and saw the defendant outside of his own house, and that was the house of the police officer as he was leaving for work. The defendant took note of the fact that the person who came out of the apartment was a police officer. When the policeman, Kenneth Pina, returned to his apartment after he came off duty he found that his apartment had been ransacked, and that his .38 caliber snub nose revolver which was his off-duty weapon had been stolen, along with other items. That gun later turned out to be the weapon that was used to murder Juan Perez."

The defendant asserts that the remarks and comments made by the prosecutor about a separate criminal act were so prejudicial that even a strong cautionary instruction delivered immediately thereafter would not have attenuated the impact of her words on the jurors' minds. The trial justice refused to pass the case and advised defendant that he would give a cautionary instruction when and if he decided the evidence was admissible. However, no cautionary instructions were delivered because of the trial justice's ruling that the evidence referred to in the opening remarks was inadmissible because of the insufficiency of proof in support thereof.[1]

It is well established that a decision on a motion to pass a case and declare a mistrial lies within the sound discretion of the trial justice. *State v. Anil*, R.I., 417 A.2d 1367 (1980); *State v. Hoyle*, R.I., 404 A.2d 69 (1979); *State v. Marrapese*, 116 R.I.

1. The trial justice refused to allow the Providence policeman to testify because the justice ruled that the policeman had no independent recollection of defendant as the person outside his house on the day his gun was stolen.

1, 351 A.2d 95 (1976); *State v. Pailin*, 114 R.I. 725, 339 A.2d 253 (1975). The ruling of the trial justice on this matter is accorded great weight and will not be disturbed on appeal unless it was clearly wrong. *State v. Pailin*, 114 R.I. at 729, 339 A.2d at 255.

When a defendant complains of allegedly prejudicial remarks made by a prosecutor, the trial justice must access the potential prejudicial impact of the challenged comments. If the prejudice is inexpiable, the motion to pass should be granted. If the prejudice can be cured, timely and effective instructions must be given. *State v. Marrapese, supra.*

Determination of whether a challenged remark is harmful or prejudicial cannot be decided by any fixed rule of law. *State v. Peters*, 82 R.I. 292, 107 A.2d 428 (1954). Rather, the justice must evaluate its probable effect on the outcome of the case by examining the remark in its factual context. *State v. Pugliese*, 117 R.I. 21, 362 A.2d 124 (1976). Prejudice clearly inheres if the challenged comments "are totally extraneous to the issues in the case and tend to inflame and arouse the passions of the jury" against the defendant. *State v. Mancini*, 108 R.I. 261, 273–74, 274 A.2d 742, 748 (1971). *See State v. Verdone*, 114 R.I. 613, 337 A.2d 804 (1975); *State v. Werner*, 87 R.I. 314, 140 A.2d 502 (1958).

In the instant case, the allegedly prejudicial comment was made by the prosecutor in her opening statement. In *State v. Peters*, we held that the opening statement to the jury should cover the nature of the offense, the time it was completed, the alleged facts of the crime without lengthy narration of expected testimony, and the witnesses who will be called to testify. We further held that in making the opening statement, "ordinary prudence requires that great care be exercised in guarding against any reference to improper extraneous matters, especially if they tend to prejudice the minds of jurors." *State v. Peters*, 82 R.I. at 297, 107 A.2d at 431. Thus, the prosecutor must not allude to any evidence in the opening statement unless there is a good faith and reasonable basis to believe that such evidence will be offered and admissible at trial. *See* ABA Standards for Criminal Justice No. 3–5.5 at 3–80 (2d ed. 1980).

Although a remark made by a prosecutor in her opening statement is improper, it is not necessarily reversible error. Rather, reversible error occurs if the allegedly improper comment was so flagrantly impermissible that even a precautionary instruction would have been insufficient to dispel the prejudice in the jurors' minds and to assure defendant a fair and impartial trial. *State v. Bowden*, 113 R.I. 649, 324 A.2d 631 (1974); *State v. Kozukonis*, 100 R.I. 298, 214 A.2d 893 (1965); *State v. Werner*, and *State v. Peters*, both *supra.*

We first note that there was no evidence that the prosecutor made the challenged remarks in bad faith. However, we find that the prosecutor erred because her reference to the fact that defendant stole the murder weapon *on the day of the crime* was not supported by competent and admissible evidence. Nevertheless, we hold that such error was harmless because the remark had no effect on the outcome of the case. *See State v. Pugliese, supra.*

The prosecutor evidently referred to the separate criminal offense to indicate that defendant acted with premeditation.[2] *See State v. Delahunt*, R.I., 401 A.2d 1261 (1979) (evidence of independent criminal act, although factually dissimilar from crime charged, is admissible to show plan or design to achieve ultimate criminal objective); *State v. Colangelo*, 55 R.I. 170, 179 A. 147 (1935) (evidence of other criminal conduct admissible to establish guilty knowledge, intent, motive, design, plan, scheme, system, or the like).

Although evidence of the independent criminal act subsequently proved to be inadmissible, the jury could reasonably infer premeditation from the evidence that

2. Premeditation is an essential element for a finding of first or second-degree murder. *See State v. McGranahan*, R.I., 415 A.2d 1298 (1980).

was admissible. That is, the record showed that defendant had adequate time to harbor a fixed and deliberate design to kill the victim. *See State v. McGranahan*, R.I., 415 A.2d 1298 (1980). Thus, there was testimony that defendant bought the murder weapon early on the day of the crime.[3] Moreover, defendant admitted to the killing, asserting that he committed the act in self-defense. Furthermore, there was testimony that animosity existed between defendant and the victim. Finally, evidence was introduced that defendant shot the victim three times in the head and chest and that no weapon was found on the victim.

We further note that at the commencement of trial, the justice cautioned the jury that opening and closing statements do not constitute evidence. Moreover, the justice gave the same admonition at the close of trial. In view of the foregoing, we are of the opinion that the challenged remarks did not have any effect on the determination of defendant's guilt or innocence. *See State v. Pugliese, supra; State v. Sfameni*, 115 R.I. 18, 24, 339 A.2d 742, 746 (1975) (Joslin, J., dissenting). Because the comments of the prosecutor did not "enflame or arouse the passions of the jury" against defendant, defendant was not prejudiced thereby. *See State v. Mancini*, 108 R.I. at 273–74, 274 A.2d at 748.

Accordingly, the trial justice did not abuse his discretion in denying defendant's motion to pass and the improper comments were insufficient to constitute reversible error.

## II

At the close of the state's case, defendant moved for judgment of acquittal, arguing that the prosecution failed to prove a felonious intent beyond a reasonable doubt. The trial justice denied the motion. After the verdict of guilty of second-degree murder was returned by the jury, defendant moved for a new trial on the ground that the verdict was against the weight of the evidence. The trial justice also denied this motion.

The gravamen of defendant's second argument is that the trial justice erroneously denied these motions. The defendant argues that the motions should have been granted because the state failed to prove beyond a reasonable doubt that defendant acted with malice, the specific intent necessary to constitute second-degree murder. *See State v. McGranahan, supra.*

A challenge to the sufficiency of the evidence is properly made by a motion for judgment of acquittal. *See* Super.R. Crim.P. 29. In passing on such a motion, the trial justice

> "is required to give full credibility to the state's evidence, view it in a light most favorable to the state, and draw therefrom every reasonable inference consistent with guilt. However, where the evidence adduced by the state and the reasonable inferences to be drawn therefrom, even when viewed in a light most favorable to the state, are insufficient to establish guilt beyond a reasonable doubt, the court must grant the defendant's motion * * *." *State v. Rose*, 112 R.I. 402, 406, 311 A.2d 281, 283 (1973).

On review, we are guided by the same standards as the trial justice in assessing the correctness of his decision to deny defendant's motion for judgment of acquittal.[4] *See State v. McGranahan, supra; State v. Gianoulos*, R.I., 404 A.2d 81 (1979).

3. In his motion to pass, defendant also admitted that the murder weapon was the pistol stolen from the police officer on the day of the crime.

4. The defendant contends that if, as in the present case, direct evidence is lacking and the sufficiency of the evidence depends on the strength of inferences to be drawn from largely undisputed facts, the context in which our standard of review is to be applied changes radically. According to defendant, because circumstantial evidence is more reviewable than direct evidence, we must independently review the record in the present case to determine the sufficiency of the evidence. We do not agree with this contention. We have ruled that there is no valid distinction to be drawn between the probative force of direct evidence and circumstantial evidence. *State v. Rose*, 112 R.I. 402, 407, 311 A.2d 281, 284 (1973). Thus, whether the evidence is circumstantial or testimonial

Viewing the evidence in a light most favorable to the state, we find that there was testimony that defendant admitted to the shooting-killing; and there was further testimony that bad feelings existed between the victim and defendant. Moreover, there was expert testimony that the cause of death was three gunshot wounds in the area of the head and chest. Furthermore, the record shows that the victim had been playing cards on the day of the crime and was in good humor. In addition, no knife was found at the scene to substantiate defendant's allegation that the victim had one in his possession. Finally, defendant admitted that the gun, a police weapon, was the instrument he employed to commit the homicide and that he bought the gun early on the day of the crime. We are of the opinion that based upon the evidence as submitted, the factfinder could reasonably infer that defendant committed the killing with malice, that is, with an intent to kill or in wanton disregard for the life of the victim or with an unjustified disregard for the probability of death or great bodily harm. *See State v. McGranahan, supra.* Accordingly, the trial justice properly denied defendant's motion for judgment of acquittal.

The defendant's next contention is that the trial justice erred in denying his motion for a new trial. He concedes that the trial justice applied the proper standard in considering the motion for a new trial. *See State v. Carsetti,* 111 R.I. 642, 306 A.2d 166 (1973) (trial justice must exercise independent judgment regarding weight and credibility of evidence). However, defendant contends that the evidence was insufficient to prove beyond a reasonable doubt that defendant acted with malice and, therefore, that the state did not meet its burden.

To prevail on appeal, defendant must show that the trial justice was clearly wrong or that in reviewing the evidence he overlooked or misconceived relevant and material evidence relating to a controlling issue. *State v. Palmigiano,* 111 R.I. 739, 306 A.2d 830 (1973). An examination of the record in this case reveals that the trial justice correctly considered the motion for a new trial. He did exercise his independent judgment in considering all the evidence and in passing on the weight and credibility of the witnesses. The defendant, himself, points out in his brief that the trial justice made an exhaustive study of the evidence. Needless to say, defendant has failed to point out where the trial justice was clearly wrong or where he overlooked or misconceived any material evidence on the issue of whether defendant acted with malice at the time of the killing. Accordingly, we find no error in the trial justice's decision.

III

The defendant's final contention is that the trial justice committed error when he refused to include instructions on the defenses of self-defense and voluntary intoxication in the supplemental instructions to the jury. After several hours of deliberation, the jury requested a supplemental instruction on the difference between first-degree and second-degree murder and manslaughter. The trial justice repeated previously given definitions of these crimes, but failed to repeat any instructions on the defenses of self-defense and intoxication. The defendant objected to the failure to instruct on the defenses, arguing that they negated elements of the crimes charged.

The defendant also argues that the trial justice committed plain error in his instruction on manslaughter. Notwithstanding defendant's failure to object to the manslaughter instruction at trial, defendant claims on appeal that the total failure of the trial justice to charge correctly on any theory of manslaughter in a case in which manslaughter was a possible verdict violated the accused's right to due process of law.

It is well settled that if a defendant has neither objected to a charge on the ground

the factfinder must weigh the evidence and must use its experience with people and events in weighing the probabilities. *See Holland v. United States,* 348 U.S. 121, 139–40, 75 S.Ct. 127, 137–38, 99 L.Ed. 150, 166–67 (1954); *State v. Roddy,* R.I., 401 A.2d 23 (1979).

urged on appeal nor requested a different charge, the charge given becomes the law of the case. *State v. Giordano*, R.I., 413 A.2d 93 (1980); *State v. McGehearty*, R.I., 394 A.2d 1348 (1978). Therefore, defendant is precluded from assigning as error the trial justice's instruction on manslaughter.

In addition, even though the defendant objected to the supplemental charge, due process requires only that the trial justice answer the jury's specific questions. *See State v. Giordano, supra.* Therefore, the trial justice was only required to instruct on the difference between first and second-degree murder and manslaughter, as the jury requested. He was not required to repeat portions of the principal charge on self-defense and intoxication, even though these defenses related to the instruction on manslaughter. Accordingly, we conclude that the defendant's claims are without merit.

The defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remanded to the Superior Court.