THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
WALTER H. WASSELL, Defendant-Appellant.

Fourth District   No. 4—83—0048

Opinion filed November 3, 1983.

Jack P. Rimland, of Chicago, for appellant.

Michael R. Roseberry, State's Attorney, of Pittsfield (Robert J. Biderman and Rebecca L. White, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE WEBBER delivered the opinion of the court:

Defendant was convicted by a jury in the circuit court of Pike

County of the offense of solicitation (murder) in violation of section 8—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 8—1). He was sentenced to six years' imprisonment.

On appeal three issues are raised: (1) error by the trial court in refusing to suppress evidence gained by use of an eavesdropping device, (2) improper jury instructions, and (3) error by the trial court in refusing to grant a new trial based upon newly discovered evidence. While the guilt of the defendant appears plainly evident, we find that he was deprived of a fair trial through the use of improperly obtained eavesdropping evidence and that a new trial is mandated. In view of this holding, the other issues become moot.

The chain of events leading to the filing of the information charging the offense began with the filing of a petition for authorization of the use of an eavesdropping device on May 26, 1982. The petition was executed by Alfred Benton, a special agent of the Illinois Department of Law Enforcement. In pertinent part it alleged:

"(a) The offense of Solicitation/Murder, is about to be committed in that Walter H. Wassell has on two occasions between May 9, 1982 and May 18, 1982 contacted a confidential source of police officials and inquired if C/S could arrange to have Lucy Wassell, wife of Walter, killed in such a manner so as to appear it was a Burglary of the Wassell residence, some time immediately following June 1, 1982.

(b) That on May 18, 1982 Walter Wassell agreed to meet with an individual for the purpose to discuss the details of said killing.

That on May 25, 1982 and May 26, 1982 Walter Wassell agreed further to meet an individual on May 26, 1982, at 8 pm, at Colonial Motel, E. Hannibal, Il in East Hannibal, Ill. [*sic*] for the express purpose of discussing and arranging for the death of Lucy Wassell."

Filed with the petition was a consent signed by Arthur Avart, another special agent of the Illinois Department of Law Enforcement, and a consent of the State's Attorney of Pike County. Based upon these documents, and without any further evidence, a judge of the circuit court of Pike County signed an order authorizing the eavesdropping on May 26, 1982, between the hours of 7 and 10 p.m.

A report was made on May 28, 1982, stating that no conversations were overheard because the defendant failed to appear at the scheduled meeting. A second application was filed on June 1, 1982, and was labeled "Request for Extension." It was executed by Benton and accompanied by consents from Avart and the State's Attorney.

The pertinent passages from it allege:

"The felony of Solicitation/Murder has been is, or is about to be committed, such belief being based on the following facts: (see initial application) Walter Wassell has contacted Informant about setting up death of his wife Lucy and that as soon as May 31, 1982, Walter Wassell has confirmed his desire to have his wife killed and requested Informant to have person who would do it contact him per clause 7(c) of this petition."

Clause 7(c) of the application alleges in pertinent part:

"On May 31, 1982 Walter Wassell did contact confidential source and requested telephone call from agent at Cardinal Inn, Pittsfield, Illinois on or after June 1, 1982 at 6:30 am regarding arranged death of his wife."

The same circuit judge, based upon the request for extension and the accompanying consents, and without further evidence, signed an order authorizing eavesdropping from June 2, 1982, at 6 a.m. to June 10, 1982, at 11:59 p.m.

Under the authority of this latter order two telephone conversations between defendant and agent Avart were recorded on tape on June 2, 1982. On June 2, 1982, a meeting between Avart and defendant was tape-recorded and video-recorded. At this meeting defendant arranged with Avart, whom he believed to be the "hit man," to have Avart murder his wife.

Defendant filed two pretrial motions to suppress the eavesdropping evidence, one before the judge who issued the orders and the other before the judge who presided at trial. Both motions were denied.

Since the State's argument concerning the eavesdropping evidence is based in part upon some of the evidence received at trial, a brief recapitulation of the trial evidence is in order even though no question of reasonable doubt has been raised on appeal.

William Pruitt, a convicted burglar and an inmate of the Vandalia Correctional Center, was returned upon a writ of *habeas corpus ad testificandum* and testified for the State. He stated that defendant spoke to him about May 9, 1982, stating that his wife was "giving him a hard time" and wondered if Pruitt "could find somebody to kill his wife." He told Pruitt that he wished the incident to appear as a burglary. After waiting a couple of days, Pruitt spoke to Robert Yelliott, a police officer, who requested him to meet with him on the afternoon of May 11. Pruitt arrived for that meeting and found special agent Benton present. He informed Yelliott and Benton that defendant was seeking someone to murder his wife.

Yelliott and Benton both testified for the State, the former confirming the conversation with Pruitt. Benton described the various efforts to arrange meetings with the defendant and further testified that Pruitt had been paid $500 for his services as an informant in this case.

Arthur Avart, the special agent who ultimately met with defendant, described various telephone calls which led up to the meeting between himself and the defendant on June 2 and explained the mechanics of the recording devices. During the meeting defendant drew a map of his home for Avart and handed him a $100 bill for expenses incurred. Defendant was arrested after his meeting with Avart.

The recordings of the two telephone conversations and the videotape of the meeting were then played for the jury. On that tape defendant indicated that he could no longer get along with his wife and wanted her dead; Avart was to commit the murder and to make it appear to have occurred in the course of a burglary; the agreed price was $1,000, the money to be placed in defendant's dresser to be collected at the time of the murder.

After the playing of the tapes, the State rested. Defendant's son testified on his behalf that even after defendant's arrest he continued to live with his wife and that during the months of April and May 1982 Pruitt called his house two or three times a week asking him to have defendant call Pruitt. Eleven character witnesses appeared for defendant, all of them testifying that his reputation in the community for being a peaceful and law-abiding citizen was excellent.

Defendant took the stand in his own defense and stated that he received numerous phone calls from Pruitt and Avart (whom he knew as Rick); he admitted to the conversations and the meeting with Avart but claimed he was trying to find excuses to put off the alleged "hit" because he did not intend to have his wife killed; his version of the $100 to Avart was that it was an attempt to get rid of him. Defendant's wife, Lucy, testified that she did not believe he intended to have her killed.

In rebuttal, both Pruitt and Avart testified about the phone calls. Avart stated that he called defendant only on the day of the meeting; Pruitt denied making the calls during April and May.

As has been indicated, the jury returned with a verdict of guilty. Defendant filed a motion for new trial based upon newly discovered evidence. Park Lacy, Jr., testified at that hearing that sometime during the month of May 1982 William Pruitt was in Lacy's tavern and that Lacy heard him say that he and defendant "were on the outs" and that "he was going to fix him up good." Terry Wassell, defend-

ant's son, also testified that he had been informed by a Rick Johnson that Johnson had overheard a similar statement by Pruitt. The trial court denied the motion for lack of diligence on the part of the defendant in discovering the evidence.

■ This case is one in which one of the parties consents to the eavesdropping. The Supreme Court has held that such a situation does not offend the fourth amendment. (*United States v. White* (1971), 401 U.S. 745, 28 L. Ed. 2d 453, 91 S. Ct. 1122.) Any restrictions placed upon it are regulated by statute and not the constitution. *People v. Childs* (1979), 67 Ill. App. 3d 473, 385 N.E.2d 147.

The statutory regulations in this State are found at sections 108A—1 through 108A—11 of the Code of Criminal Procedure of 1963. (Ill. Rev. Stat. 1981, ch. 38, pars. 108A—1 through 108A—11.) Section 108A—3(a) sets forth the requirements for an application for an eavesdropping device. Among other things, the application must contain a statement of facts and circumstances relied upon by the applicant to justify his belief that an order should be issued. Section 108A—3(b) provides: "The judge may request the applicant to furnish additional testimony, witnesses, or evidence in support of the application." Section 108A—4 requires the authorizing judge to find reasonable cause.

■ Defendant has argued here that the application must meet the two-prong test of *Aguilar* and *Spinelli* (*Aguilar v. Texas* (1964), 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509; *Spinelli v. United States* (1969), 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584). We note that this test has been abandoned by the Supreme Court in favor of a "totality of circumstances" test. (*Illinois v. Gates* (1983), 462 U.S. ___, 76 L. Ed. 2d 527, 103 S. Ct. 2317.) In any event, that argument was rejected in *People v. Moore* (1980), 90 Ill. App. 3d 760, 413 N.E.2d 516. In *Moore* this court explained the difference in mechanics between an application for a search warrant and an application for an eavesdropping device. In the case of the search warrant, the *Aguilar-Spinelli* test (now the *Gates* test) must be met on the face of the application. In the case of the eavesdropping device, the additional testimony under section 108A—3(b) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 108A—3(b)) is the key. In both instances these are methods of determining the credibility and reliability of the hearsay in the applications.

Without deciding, as we need not in this case, whether there is a qualitative difference between probable cause needed for a search warrant and reasonable cause needed for an eavesdropping device, it is our opinion that the record here sustains neither burden.

The State makes the novel argument that the testimony received

at trial would somehow retroactively support the application. Specifically, the State points to the trial testimony of Yelliott and Benton that Pruitt had previously acted as a confidential informant. We know of no well-reasoned authority which states that after-acquired or after-presented testimony is available to bolster an inadequate application.

The fundamental principle involved is that the judge issuing an eavesdropping authorization must find reasonable cause; it follows from this that if hearsay appears in the application, he must have some basis for crediting that hearsay. This may be accomplished in either of two ways: (1) on the face of the application itself as in the case of an application for a search warrant (*Moore*), or (2) through the use of additional evidence under section 108A—3(b). Ill. Rev. Stat. 1981, ch. 38, par. 108A—3(b).

The statement made in *People v. Sylvester* (1980), 86 Ill. App. 3d 186, 193-94, 407 N.E.2d 1002, 1009, is pertinent:

"Therefore, we conclude that the judge's approval or authorization for use of an eavesdropping device, upon a finding that reasonable cause exists for believing an individual is committing, has committed or is about to commit a felony and that a particular conversation relating to that felony will be obtained (Ill. Rev. Stat. 1977, ch. 38, pars. 108A—4(b), (c)), can appropriately be based on the application submitted together with additional testimony and evidence submitted at his request.

Irrespective of what additional information or testimony, if any, was given at the time the eavesdropping application was reviewed, we reject the defendant's argument because we find the application and accompanying documents were sufficient to enable the judge to make the findings required by statute."

In the case at bar neither course of action was taken. An examination of the application and the extension, set forth above, reveals unadulterated hearsay in each of them. The record is totally silent as to any evidence taken in connection with either one. The authorization was improperly granted and the evidence obtained should have been suppressed. It was not, and defendant is entitled to a new trial without that evidence.

Since the case must be retried, a brief comment on the instructional issue is in order, although it has not been preserved for review in defendant's post-trial motion. *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.

The court gave to the jury the pattern instruction defining the offense of solicitation. (Illinois Pattern Jury Instruction (IPI), Criminal,

No. 6.01 (2d ed. 1981).) It followed IPI Criminal No. 6.01 with IPI Criminal No. 7.01 defining murder. The latter included three types of murder: (1) intent to kill, (2) knowledge that such acts will cause death, and (3) knowledge that such acts create a strong probability of death. Since solicitation is an offense requiring specific intent, the contradiction is patent. *People v. Trinkle* (1977), 68 Ill. 2d 198, 369 N.E.2d 888.

Standing alone, we do not believe that this error constitutes a basis for reversal. Defendant claimed entrapment and thereby admitted all of the elements of the offense, including the mental state. Therefore, the jury could not have been misled. However, on retrial only the specific intent to kill alternative of IPI Criminal No. 7.01 should be given.

In view of the necessity of retrial the question of newly discovered evidence becomes moot.

The conviction and sentence of the defendant are therefore reversed and the cause is remanded to the circuit court of Pike County for a new trial in accordance with the views expressed herein.

Reversed and remanded for new trial.

GREEN and MILLER, JJ., concur.