**STATE**

v.

**Dennis F. MELLO.**

83–23–C.A.

Supreme Court of Rhode Island.

March 9, 1984.

</div>

Dennis J. Roberts II, Atty. Gen., Margaret R. Levy, Sp. Asst. Atty. Gen., for plaintiff.

William A. Dimitri, Jr., Oleg Nikolyszyn, Providence, for defendant.

## OPINION

MURRAY, Justice.

This is an appeal by the defendant, Dennis F. Mello, from a Superior Court conviction on one count of burning a dwelling and one count of conspiring to burn a dwelling in violation of G.L.1956 (1969 Reenactment) §§ 11-4-2 and 11-1-6. The defendant was charged with the above offenses and with a third offense, burning with intent to defraud an insurer, which was dismissed on the defendant's motion prior to trial. Trial commenced in Newport on October 7, 1980, before a justice of the Superior Court and a jury. On October 16, 1980, the jury found the defendant guilty on both counts.

The fire in question occurred at defendant's home on October 11, 1978. An investi-

gator for the State Fire Marshal's Office testified that the fire was incendiary in origin and had begun in the office area on the first floor of the home.

The state's case against defendant was based on the testimony of Thomas J. Fillion (Fillion), an unindicted co-conspirator.[1] Fillion was the brother of defendant's son-in-law. Fillion testified at trial that he had set the fire at defendant's request. According to Fillion, defendant telephoned him on October 10, 1978, and asked him to come to defendant's home. Fillion arrived at defendant's home later that day. At that time defendant asked Fillion to set fire to his home in exchange for future payment. A plan for accomplishing the deed was discussed, and Fillion ultimately agreed to set the fire.

Fillion testified that in accordance with defendant's instructions he entered the house by an unlocked side door, walked down a hallway into defendant's first-floor office, placed a Coca-Cola can full of gasoline in a designated place on the floor, put a match to it, and left the way he had entered. He then informed his brother, who lived next door to defendant, of the fire. He later told the police that at the time of the fire he saw two men running from the house while carrying boxes. Fillion steadfastly adhered to this version of what had occurred for approximately one year before coming forward and implicating defendant.

In an attempt to address the fact that charges against Fillion had been dismissed, the state elicited testimony from Detective Lawrence Fernandes of the Tiverton police that defendant owned a pistol and that the Tiverton police were concerned for Fillion's safety. When the testimony about the fear for Fillion's safety was elicited, defense counsel moved to pass the case, arguing that the combined effect of Detective Fernandes's testimony was highly prejudicial. Defense counsel was obviously concerned

---

1. At the time Fillion came forward, there were drug charges pending against him which were blocking his efforts to enter the military. These charges were dropped, along with the burning charge, subsequent to his statement to the police concerning defendant's involvement in the fire.

that an implication was being created that defendant had threatened Fillion's life.

The defendant testified at trial that he was in no way involved with the arson. Rather, he relied on evidence purporting to show that criminals had broken into his basement and then made their way to his first-floor office where they stole $3,200 from a file cabinet before setting fire to his house.

Detective Fernandes testified that a screen window in the basement had been "neatly cut" and that there were "pry marks" on the inside of the doors that led from the basement to the first floor of the house. During his closing argument, however, the prosecutor clearly misstated the evidence when he said: "and then he put some pry marks on the door upstairs, but as always happens in crime, the police realize that the pry marks are on the *wrong side of the door.*" (Emphasis added.) Relying on this misstatement, defense counsel moved to pass the case. The trial justice denied the motion, stating that "perhaps the testimony of Fernandes was not accurately relayed to the jury by the prosecutor. I am certain it was unintentional."

The defendant claims on appeal that the trial justice committed error in (1) denying defendant's motion to pass the case based upon the testimony of Detective Fernandes that the Tiverton police were in fear of Fillion's safety and (2) denying defendant's motion to pass the case based upon the prosecutor's misstatement of the evidence during closing argument. We find defendant's second claim of error dispositive and shall address only that issue.

The defendant argues that since credibility was a crucial factor in this case, the prosecutor's misstatement of the evidence stabbed at the heart of his defense and cannot be considered harmless. The state, on the other hand, argues that even if the misstatement was error, it was harmless in that it could not have "caused the jury to return a different verdict" than they would have had it been excluded. *State v. Bow-*

*den,* R.I., 439 A.2d 263, 269 (1982). We do not agree with the state's argument.

It is well settled, as we have stated in the past, that a decision on a motion to pass and declare a mistrial lies within the sound discretion of the trial justice. *State v. Collazo,* R.I., 446 A.2d 1006, 1009 (1982). The ruling of the trial justice on such matters is accorded great weight and will not be disturbed on appeal unless clearly wrong. *Id.,* 446 A.2d at 1010; *State v. Pailin,* 114 R.I. 725, 729, 339 A.2d 253, 255 (1975).

We have said that when a defendant complains of allegedly prejudicial remarks made by a prosecutor, it is the duty of the trial justice to assess the potential prejudicial impact of the challenged comments. "If the prejudice is inexpiable, the motion to pass should be granted. If the prejudice can be cured, timely and effective instructions must be given." *State v. Collazo,* R.I., 446 A.2d at 1010; *State v. Marrapese,* 116 R.I. 1, 7, 351 A.2d 95, 98 (1976). In the present case, defendant challenged the prosecutor's misstatement of the evidence and moved to pass the case. In considering the motion, the trial justice realized that "perhaps the testimony of Fernandes was not accurately relayed to the jury by the prosecutor." However, she apparently did not feel that the prejudicial impact of the prosecutor's comments was so significant as to warrant either the granting of the motion or a cautionary instruction. Rather, the trial justice relied on a general instruction given to the jury during her charge. This was not enough.

There is no question in our minds that the prosecutor misstated the evidence and, in so doing, prejudiced defendant. This is not to say, however, that the prejudice was inexpiable. A timely and effective cautionary instruction could have cured whatever prejudicial impact the misstatement may have had. No such instruction was given. The trial justice was of the opinion that her general instruction to the jury to the effect that their memory of the

testimony is controlling and her promise to honor any reasonable request to read back portions of the testimony were sufficient. We do not concur. Although we are mindful of the considerable latitude afforded a trial justice in these matters and the great weight accorded the ruling of the trial justice, we hold that the failure to give a cautionary instruction in this case was clearly wrong.

For these reasons, the defendant's appeal is sustained, the conviction is reversed, and the case is remanded to the Superior Court for a new trial.