**STATE**

v.

**Alan T. WARE.**

**No. 86–157–C.A.**

Supreme Court of Rhode Island.

April 29, 1987.

James E. O'Neil, Atty. Gen., Michael F. Burns, Thomas Dickinson, Asst. Attys. Gen., for plaintiff.

William F. Reilly, Public Defender, Paula Rosin, Barbara Hurst, Asst. Public Defenders, for defendant.

## OPINION

KELLEHER, Justice.

A Superior Court jury has found the defendant guilty of having committed manslaughter. He is before us on a two-facet appeal in which he faults the trial justice for (1) denying the defendant's motion to pass on the grounds that the prosecutor, in his opening remarks to the jury, stated that the jury would hear testimony that was later deemed inadmissible, and (2) allowing graphic, postautopsy photographs of the victim, a one-year-old child, before the jury, during the direct examination of the medical examiner.

On October 12, 1984, an indictment was filed in Providence County Superior Court charging Alan T. Ware (Ware) with the murder of his one-year-old daughter, Monique Lawrence. Ware was tried before a jury in September of 1985. On September 10, 1985, a verdict of guilty of manslaughter was returned.

The relevant facts of this case are as follows. On May 30, 1984, a social worker for the Department of Children and Their Families (DCF) visited the foster home of Shaquana Lawrence, the three-year-old daughter of Charlene Lawrence and sister of the victim, in order to return her to her mother. The DCF worker met with the mother, Charlene, at a state center. Present at this meeting was Monique Lawrence, as well as defendant and Charlene's young son. The DCF worker observed that Monique was very active in the center's waiting-room play area, appearing alert and responsive. At 11 a.m. the DCF worker left the center to return the family to their Providence home, arriving there at 11:15 a.m. The worker had an opportunity to play with Monique in Monique's bedroom for a few minutes, noticing that the child was alert, responsive, and playful. When the DCF worker left at 11:30 a.m., Charlene Lawrence accompanied her, requesting a ride to a doctor. The defendant remained at the house.

At approximately 2:45 p.m. Charlene returned home. Charlene observed that Monique was lying on her bed. She noticed that the child looked feverish. The defendant, noting that the child's hands were cold, stated that the chill was caused by a milk feeding. When the child refused her bottle, Charlene took Monique to St. Joseph's Hospital in Providence. In the car en route to the hospital defendant, according to Charlene, told Charlene "We're going to go to St. Joseph's and * * * if they ask what the bruises on her [sic], say that is from her breaking out from Tide detergent." Monique Lawrence died later in the day.

In his opening statement to the jury, the prosecutor made the following remarks in describing the events of May 30, 1985: "And Charlene went downtown, ran some errands, ran into her sister Sonya and she returned to the house somewhere in the vicinity of quarter of three, ten of three that afternoon. And Shaquana [her other daughter] came up, told her 'Monique's sick, the baby's sick.'" When Charlene Lawrence took the witness stand, she was not permitted to testify concerning Shaquana's statement, presumably on the grounds that it constituted inadmissible hearsay. Counsel for Ware then moved to pass the case, arguing that the question of whether Monique was sick when Charlene Lawrence returned home was of critical importance. Counsel for Ware would later contend in final argument that no evidence elicited and admitted at trial suggested anything but the fact that Monique was injured *after* Charlene Lawrence returned home on the afternoon of May 30, in which case it was only her word about the events of that afternoon that could constitute the evidence necessary to convict Ware, thus creating the inference that she may very well have caused Monique's death.

On appeal, counsel for Ware maintains that the prosecutor's statement that the evidence would show that Charlene was informed when she arrived home that Monique was sick was highly prejudicial, "as it directly rebutted Mr. Ware's contention that the baby was fine when Charlene returned home and that it was Charlene who

inflicted the fatal injuries." The trial justice therefore, according to Ware, committed reversible error in failing to pass the case against Ware.

We have repeatedly stressed that a decision on a motion to pass a case and declare a mistrial is within the sound discretion of the trial justice and will not be disturbed on appeal unless clearly wrong. *State v. Cooke*, 479 A.2d 727, 734 (R.I.1984); *State v. Mello*, 472 A.2d 302, 304 (R.I.1984). When a defendant's claim of error concerns allegedly prejudicial remarks made by a prosecutor, the trial justice must determine whether the prejudicial impact, if any, is inexpiable. *State v. Collazo*, 446 A.2d 1006, 1010 (R.I.1982). If the prejudice is inexpiable and incurable by timely instructions, the motion to pass should be granted. *Id.* We cannot determine whether a challenged remark is harmful or prejudicial by applying some fixed rule of law but instead must evaluate the probable effect of the statement on the outcome of the case by examining the remark in its factual context. *Id.* Prejudice inheres if the comments " 'are totally extraneous to the issues in the case and tend to inflame and arouse the passions of the jury' against the defendant." *Id.* (quoting *State v. Mancini*, 108 R.I. 261, 273–74, 274 A.2d 742, 748 (1971)).

Over thirty years ago this court stressed that "the opening statement to a jury should cover the nature of the offense, the time of its completion, the facts claimed to constitute the crime without lengthy narration of expected testimony, and the witnesses who will be called to testify." *State v. Peters*, 82 R.I. 292, 297, 107 A.2d 428, 431 (1954). This court advised that "ordinary prudence requires that great care be exercised in guarding against any reference to improper extraneous matters, especially if they tend to prejudice the minds of jurors." *Id.*

The present case involves a challenge to a remark made during the opening statement that concerned evidence later deemed

inadmissible. The general rule in such situations is that there must be a good-faith and reasonable basis upon which a prosecutor may believe that such evidence will be offered and deemed admissible at trial. *State v. Collazo*, 446 A.2d at 1010; *see* ABA Standards Relating to the Administration of Criminal Justice No. 3–5.5 at 3–80 (2d ed. 1980).

A showing that the prosecutor lacked bad faith in making a remark during the opening statement that does not comport with the evidence later on is not, however, dispositive. We will not countenance errors made during the prosecutor's opening that are prejudicial, incurable, and affect the outcome of a case, regardless of the prosecutor's good intentions. *See Collazo*, 446 A.2d at 1010. In *Collazo* we ruled that a prosecutor's reference to separate criminal acts on the part of the defendant, designed to establish premeditation on the defendant's part, constituted error because such reference was not supported by competent and admissible evidence.[1] The witness who would have testified to the separate offense had no independent recollection of the events of the prior act linking the defendant to that act. *Id.*

In the case before us there has been no showing on the part of defendant that the prosecutor acted in bad faith by referring in his opening to hearsay evidence later deemed inadmissible. Even if the prosecutor technically erred in referring to young Shaquana's statement, such error differs from the error cited in *Collazo*, where there was no competent evidence of the fact referred to in the opening. Here, the prosecutor referred to an alleged out-of-court statement, made by a young child, that may have eventually been found to be an excited or spontaneous utterance. In other words, the statements were potentially admissible, and absent evidence of bad faith and incurable prejudice, reference to them in an opening statement did not constitute reversible error. *See People v. Moore*, 90 Ill.App.3d 760, 46 Ill.Dec. 76, 413

---

1. Despite our finding that the prosecutor's remark constituted error, we ruled that the error was harmless, lacking an effect upon the out-

come of the case. *State v. Collazo*, 446 A.2d 1006, 1010 (R.I.1982).

N.E.2d 516 (1980). We note further that the trial justice duly noted while instructing the jury that comments made by the attorneys during the course of trial are not evidence and are not to be considered as such. Additionally, the trial court did not hear any objection from defendant in regard to the remarks made during the opening until after Charlene Lawrence took the stand and began to recount the remarks. If the statements by the child were indeed prejudicial and obviously inadmissible, counsel for defendant at the very least should have sought immediate curative instructions. The fact that counsel did not do so supports the state's claim that the remarks were reasonably, and potentially, admissible.

Finally, a review of the record as a whole reveals that there was ample independent evidence to find defendant guilty of manslaughter. Looking at the evidence as a whole, we find nothing to indicate that the prosecutor's remarks inflamed or aroused the passions of the jury against defendant. *See State v. Mancini*, 108 R.I. at 273–74, 274 A.2d at 748. Thus we reject defendant's appeal on this point.

Ware's second ground for appeal concerns the admission of four black-and-white photographs of the victim taken after an autopsy had been performed. Ware contends that the photographs, admitted during the direct examination of Dr. William Q. Sturner, chief medical examiner, were gruesome and disturbing and in no way could have assisted the jury in determining any issue at trial.

This court has, on numerous occasions, ruled on the admissibility of photographs during the course of a trial. The oft-repeated general rule is that the question of the materiality or relevancy of photographs is a matter of judicial discretion. *State v. Austin*, 462 A.2d 359, 367 (R.I.1983); *State v. Kieon*, 93 R.I. 290, 295, 175 A.2d 284, 287 (1961); *State v. Greene*, 74 R.I. 437, 443, 60 A.2d 711, 715 (1948). Photographs are no less admissible during the course of a murder trial. A photograph of a murder victim, in particular, "is admissible so long as it is competent evidence which reason-

ably tends to prove or disprove some material fact in issue, provided it is not offered for the sole purpose of arousing the passions of the jury. If these conditions are satisfied, it is of no concern that a photograph may be unpleasant to view or that it may have an influence beyond the strict limits of the purpose for which it was introduced." *State v. Bowden*, 113 R.I. 649, 658, 324 A.2d 631, 637 (1974).

Photographs may be admitted for a number of relevant purposes. They may aid the jury in understanding the evidence by serving as proof of the corpus delicti; they may display the extent of the injuries, identify the body and its condition, or bear on the atrociousness of the crime. *State v. Ryan*, 113 R.I. 343, 350, 321 A.2d 92, 96 (1974); *State v. Winston*, 105 R.I. 447, 450, 252 A.2d 354, 356 (1969). The photographs, when relevant, are no less admissible even when they may tend to influence the jury beyond the strict limits of the purpose for which they were introduced. *Id.*

Ware's contention that the photographs were inflammatory is not a novel one. Faced with similar challenges in the past, this court has held that to be inflammatory, evidence must be "of such a nature as to inflame the jurors and therefore prejudice them beyond the ordinary prejudice that is always sustained by the introduction of relevant evidence intended to prove guilt." *State v. Fenner*, 503 A.2d 518, 526 (R.I. 1986). We review the record to determine whether the trial justice "carefully considered whether the probative value of [the] evidence was outweighed by undue prejudice," *id.*, keeping in mind that even if the evidence offered is of a gruesome nature and might tend to influence the jury unduly, it may nevertheless be admissible if it is otherwise material and competent. *State v. Smith*, 70 R.I. 500, 513, 41 A.2d 153, 159 (1945).

The four photographs admitted at Ware's trial are black-and-white photographs of the victim. They are eight by eleven inches in size and depict the victim from the front and the back. The photographs were admitted during the testimony of the medical examiner, and they depict,

most significantly, six half-inch bruises on the victim's right chest area, three bruises on the lower-back, and abrasions on the child's buttocks. The doctor testified regarding the contents of these photographs during a portion of his testimony dealing with his external examination of the victim. His opinion was that the cause of death was hemorrhage in the abdominal cavity, caused by lacerations of the liver and the vena cava (a large blood vessel) resulting from an external trauma to the chest and abdomen.

■ We cannot agree with Ware's contention that the photographs admitted lacked relevancy and were offered for the sole purpose of inflaming the jury. The photographs, offered during the testimony of the medical examiner, were relevant for several purposes. The existence of visible bruises on the victim, though not disputed by defendant, was relevant on the issue of whether force had been used by defendant upon the victim. At the very least the photographs were proof of the extent of the injuries suffered. *See Winston,* 105 R.I. at 450, 252 A.2d at 356.

■ Ware contends that the photographs offered were particularly prejudicial because they were taken after an autopsy had been performed on the victim: the photographs contained graphic portrayals of the victim with a series of thick, black stitches running the length of the torso. Because the stitches were in no way related to the alleged injuries suffered, Ware maintains that the disturbing marks were highly prejudicial.

Although the content of the photographs, particularly the stitches, is disturbing, we cannot say that this fact in and of itself renders the photographs inadmissible. The very relevancy of the photographs lies in their relation to the testimony of the medical examiner. The examiner was forced to conduct an autopsy in order to properly determine the cause of death, and the inexorable result of such an autopsy will be sutures along the length of the torso. Had there been no bruises or other marks on the torso relevant to the case at hand, we might agree that such a graphic depiction

of the torso—if, for example, it were offered to prove identification only—was overly prejudicial. We believe, however, that a reasonable jury can understand that sutures of this kind do not result from any alleged injury to the victim but follow a necessary autopsy. Again, regardless of the content of the photographs, we look to whether the trial justice "carefully considered whether the probative value of this evidence was outweighed by undue prejudice." *Fenner,* 503 A.2d at 526. Here, the trial justice engaged in a lengthy conference involving the state's proposed introduction of photographs of the victim, excluding a number of them as inadmissible and admitting four in conjunction with the testimony of the medical examiner. This discretion, duly exercised by the trial justice, was not abused.

Ware's appeal is denied and dismissed, and the judgment of conviction appealed from is affirmed.